RUSLAN SHIPPING CORPORATION,
Plaintiff–Appellant,

v.

COSCOL PETROLEUM CORPORATION,
Defendant–Appellee.

No. 80–1147.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1980.

Decided Dec. 12, 1980.

Raymond A. Connell, New York City, for plaintiff–appellant.

Richard H. Webber, New York City, for defendant–appellee.

Before WOOD and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUDAHY, Circuit Judge.

The issue before us is whether the district court properly vacated the writ of maritime attachment and garnishment obtained by plaintiff–appellant Ruslan Shipping Corporation ("Ruslan") against funds of defendant–appellee Coscol Petroleum Corporation ("Coscol") on deposit at the Continental Illinois National Bank and Trust Company of Chicago ("Continental"). We believe the district court, in deciding the controversy, prematurely determined that the attachment procedure set forth in Rule B(1) of the Supplemental Rules of Federal Civil Procedure for Certain Admiralty and Maritime Claims ("Supplemental Rules") is unconstitutional. We therefore vacate and remand for consideration of Coscol's nonconstitutional claims.

I.

Pursuant to a tanker voyage charter party dated December 3, 1979 (the "Charter"), Ruslan carried a cargo of "[c]rude and/or dirty petroleum products" for Coscol from Es Sider and Zueitina, Libya to Nederland, Texas. Upon arrival at the port of destination, however, Ruslan's vessel, the T.T. Agios Ioannis, was unable to discharge 19,082 barrels of liquid from nine of the eleven cargo tanks that carried the crude oil loaded at Zueitina.[1]

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. The two other tanks containing Zueitina crude oil were discharged without incident, and all but 11 barrels were discharged from a third tank. There appears to be some dispute whether all the "liquid" remaining in the undis-

Coscol claimed that the liquid remaining in the tanks was Zueitina crude oil that would have been discharged but for defective pumps on the T.T. Agios Ioannis. Coscol determined that the Zueitina crude remaining on board plus freight from Zueitina to Nederland had a value of $742,321.79. Coscol therefore deducted this amount from the total freight due under the Charter pursuant to the Charter's "Amoco Cargo Retention Clause," which provides:

> In the event that any cargo remains on board upon completion of discharge, Charterer shall have the right to deduct from freight an amount equal to the FOB port of loading value of such cargo plus freight due with respect thereto, provided that the volume of cargo remaining on board is pumpable as determined by an independent surveyor. Any action or lack of action in accordance with this provision shall be without prejudice to any rights or obligations of the parties.

Ruslan, however, maintained that Coscol's retention of freight under the Amoco Retention Clause was improper, since the cargo that remained on board the T.T. Agios Ioannis was, in its view, "unpumpable." After unsuccessfully urging Coscol to place the withheld freight in an interest–bearing account (rather than paying it to Vickers Petroleum Corporation, the apparent owner of the undischarged Zueitina crude oil) pending arbitration of the dispute,[2] Ruslan filed a complaint in the district court on January 28, 1980, for freight and demurrage allegedly due under the Charter which, in the aggregate totalled $1,067,465.11. The verified complaint, which set forth a maritime claim within the meaning of Supplemental Rule 9(h), stated that Coscol could not be found within the Northern District of Illinois. Therefore, pursuant to Ruslan's request under Supplemental Rule B(1),[3] the deputy clerk of the United States District Court for the Northern District of Illinois issued a summons and process of maritime attachment and garnishment directing the United States Marshall to:

> [A]ttach Defendant's debts, credits and effects to the amount sued for in the hands of the garnishee named in the Complaint, specifically:
>
> Continental Illinois National Bank & Trust Company of Chicago
> 231 South LaSalle Street
> Chicago, Illinois 60604.

This writ was served on Continental on January 28, 1980, resulting in attachments of Coscol's funds on deposit in the amount of $999,090.45. After learning of this attachment, Coscol moved under Rule 14 of the United States District Court for the Northern District of Illinois Admiralty

---

charged tanks was Zueitina crude oil, since Coscol claims that approximately 2,708 barrels of water were not removed from the cargo tanks before they were loaded at Zueitina.

2. Ruslan argues that under the terms of the Charter, the merits of this dispute must be determined by a panel of arbitrators in New York. Ruslan accordingly contends that further proceedings in the district court must be stayed pending the outcome of the New York arbitration. *See* 9 U.S.C. § 8 (1976). Coscol maintains that Ruslan waived its right to arbitration by commencing the instant admiralty action and by requiring Coscol to plead on the merits before requesting arbitration. Appellees' brief at 19–21. The district court has not yet ruled on this question. We therefore decline to do so.

3. Supplemental Rule B(1) provides:
ATTACHMENT AND GARNISHMENT: SPECIAL PROVISIONS
  (1) *When Available; Complaint, Affidavit, and Process.* With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies so invoked.

Rules ("Local Rule 14")[4] to "vacate instanter the summons and process of maritime attachment and garnishment." Coscol also filed an answer and counterclaims for alleged short delivery and "in transit losses" totalling $1,017,321.79.

On February 6, 1980, the district court granted Coscol's motion to vacate the summons and process of maritime attachment and garnishment. The district court did not issue a written opinion setting forth the reasons for its decision but instead held (according to the transcript of its remarks) that the attachment procedure set forth in Supplemental Rule B(1) violated defendant's procedural due process rights under the Fifth Amendment to the United States Constitution.[5]

4. Local Rule 14 provides, in relevant part:

Summary Release From Arrest or Attachment

Where property is arrested or attached, any person claiming an interest in the property arrested or attached, may, upon evidence showing any improper practice or a manifest want of equity on the part of the plaintiff be entitled to an order requiring the plaintiff to show cause *instanter* why the arrest or attachment should not be vacated. . . .

5. The February 6, 1980 transcript of the district court's statement reads, in relevant part:

Rule B(1), and its local counterpart, provide no significant protection to the defendant from unwarranted, unlawful, unjustified seizure of its funds.

All that is required under B(1) is an allegation on information and belief that can be made by the claimant or by its counsel that the defendant cannot be found in the District.

Unlike the old writ of replevin, where the plaintiff had to allege a preexisting ownership interest in the chattel and the right to immediate possession, unlike most statutory attachments—most state statutes regulating attachment, where the plaintiff has to allege fraud on the part of the defendant, or the concealment of assets on the part of the defendant, nothing of that nature is required here at all.

The plaintiff is not put to any burden to justify the summary seizure of defendant's property.

No Judge looks at it. The Clerk issues the writ.

No bond is required other than the $250 cost bond, and I really don't know whether we require that anymore in this District.

## II.

The great gravity and delicacy of constitutional decision–making counsels that federal courts abjure constitutional rulings where a "dispositive nonconstitutional ground is available." *Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1973).

'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.' Before deciding the constitutional question it [is] incumbent on [the district court and court of appeals] to consider whether the statutory grounds might be dispositive.

It seems to me the last time the Judges met we talked about getting rid of it, because it's almost meaningless.

It so happens that there is a ship involved, and I realize that that makes it an admiralty case. But I am not smart enough, gentlemen for the plaintiff, to distinguish this case in any significant way from *North Georgia Finishing, Inc. v. Di–Chem*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751.

I suppose that Professor Chitty would have turned over in his grave when he learned–or has he learned that the Supreme Court of the United States had declared that ancient writ or [sic] replevin that dated back to the year 1413, a violation of the due process clause of the Fourteenth Amendment.

And maybe some great admiralty judge or lawyer will roll over in his or her grave when he finds out that Marshall says that Rule B(1) violates the due process clause of the Fifth Amendment, for its want of due procedure.

But Judge Beeks thought it, and he said it [in *Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.*, 450 F.Supp. 447 (W.D.Wash.1978)], and I wish that I had the time and the ability to express my view as articulately as he has, but I have neither the time nor the ability, so I am going to refrain from doing that.

As applied to the facts in this case, if not on its face, it is my judgment that Rule B(1) of the Supplemental Rules of the Federal Rules of Civil Procedure is invalid, cannot be utilized; that the process which has been served upon the defendant in the garnishee bank pursuant to Rule B(1) violates the due process clause of the Fifth Amendment and should be quashed and accordingly the defendant's motion to quash the attachment is granted.

And the attachment is discharged.

*New York City Transit Authority v. Beazer,* 440 U.S. 568, 582, 99 S.Ct. 1355, 1363, 59 L.Ed.2d 587 (1979) (citation omitted). *See also City of Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 1496, 64 L.Ed.2d 47 (1980); *Califano v. Yamasaki,* 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979); *Ashwander v. TVA,* 297 U.S. 288, 345–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

Although Coscol relied on both Local Rule 14 and procedural due process analysis in support of its motion to vacate the attachment, the district court focused only on the latter. While it may be acceptable for a court to disregard a nonconstitutional claim if it is clear that it would not constitute substantial grounds for vindicating the claimant's position, *see City of Mobile v. Bolden, supra,* 100 S.Ct. at 1496; *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 628–29, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974), we believe here that Coscol's claims under Local Rule 14 are sufficiently substantial [6] to merit consideration before deciding the constitutional question.[7] Indeed, Local Rule 14 seems to confront several objections which are as weighty as those which otherwise might demand constitutional disposition. It is significant that an equivalent of Local Rule 14 was not available to Judge Beeks for alternative consideration in the leading determination of unconstitutionality of Supplemental Rule B(1). *Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.,* 450 F.Supp. 447, 458 (W.D.Wash. 1978).

Having determined that the claim under Local Rule 14 should be adjudicated, we are faced with two alternatives. We can either decide the question on the record before us, requesting additional briefing if necessary, *see New York City Transit Authority v. Beazer, supra,* 440 U.S. at 583 n.24, 99 S.Ct. at 1364 n.24; *Regents of the University of California v. Bakke,* 438 U.S. 265, 281, 98 S.Ct. 2733, 2743, 57 L.Ed.2d 750 (1978), or we can remand for initial consideration of the issue by the district court, *see Massachusetts v. Westcott,* 431 U.S. 322, 97 S.Ct. 1755, 52 L.Ed.2d 349 (1977); *Clay v. Sun Insurance Office, Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); *Beeson v. Hudson,* 630 F.2d 622, 627 (8th Cir. Sept. 17, 1980).

The district court is best equipped to make the factual determinations necessary to establish the merit of Coscol's Local Rule 14 claims. We therefore vacate the judgment (subject to any interim arrangements deemed appropriate by the district court to preserve the status quo [8] pending its further decision) and remand for consideration of the nonconstitutional claims and for fur-

---

**6.** Coscol argues that the evidence in this case demonstrates improper practices and manifest want of equity on the part of Ruslan. Coscol urges that its withholding of the freight due on the Zueitina crude oil remaining on board the T.T. Agios Ioannis was permitted under the Charter's Amoco Retention Clause. It further maintains that, in any case, there was no justification for the attachment, since the undischarged oil provided sufficient security for Ruslan's claims. The following dialogue between the district court and Ruslan's counsel suggests that the district court might well find some merit in these claims:

Mr. Connell: I am just trying to say that Your Honor seemed upset that–I think Your Honor had the impression that we, out of the blue, struck on a bank account with no justification.

The Court: Not only do I have that impression, I am convinced of it to a moral certainty.

Coscol also maintains that other evidence, including alleged factual errors and false allegations in plaintiff's verified complaint, further demonstrates improper practice on the part of Ruslan in violation of Local Rule 14.

**7.** Of course we express no opinion on the procedural due process question, which we believe was prematurely decided by the district court. In addition, we express no opinion at this time whether the constitutionality of Supplemental Rule B(1) should be tested facially or as applied in context with Local Rule 14.

**8.** On February 8, 1980, this court denied Ruslan's motion for a stay pending appeal of the district court's order discharging the writ pursuant to Coscol's "continuing representation that [it] would make no attempt 'to conceal or remove assets other than in the normal course of business' from [its account at Continental]."

ther proceedings consistent with this opinion.[9]  Each party is to bear its own costs.

---

**9.** If on remand the district court decides against Coscol on the Local Rule 14 claim, it should consider Coscol's other nonconstitutional claims, including its argument under Supplemental Rule E(7) that Ruslan must give security sufficient to satisfy Coscol's counterclaims and its request that the court reduce the garnished funds to zero under Supplemental Rule E(6).  If, after considering all of Coscol's nonconstitutional claims, the district court still perceives a need to decide the constitutional issues, it is, of course, not precluded from doing so.