ROBERT J. MORRIS AND JOHN A. MEEKS *v.* CITY OF KOKOMO, JOHN DALY, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF WORKS OF THE CITY OF KOKOMO AND AS A PRIVATE INDIVIDUAL, EARL HEMMEGER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF WORKS OF THE CITY OF KOKOMO AND AS A PRIVATE INDIVIDUAL, KENNETH ANDREWS, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF WORKS OF THE CITY OF KOKOMO AND AS A PRIVATE INDIVIDUAL, AND ROBERT E. DONOGHUE, AS CHIEF OF THE KOKOMO FIRE DEPARTMENT AND AS A PRIVATE INDIVIDUAL

[No. 2-976A345. Filed October 19, 1978. Rehearing denied November 21, 1978. Transfer denied March 26, 1979.]

*John R. Gambs, Robert L. Bauman, Heide, Gambs & Mucker*, of Lafayette, for appellants.

*Kenneth L. Andrews, Fred G. Osborn, Ralph L. Helms*, of Kokomo, for appellees.

SULLIVAN, J.—On November 11, 1975, Assistant Fire Chief Robert A. Morris and District Fire Chief John A. Meeks were demoted to the rank of private with commensurate reductions in pay and work responsibilities. Various means were employed in an attempt to regain their

former positions, culminating with a complaint for declaratory and injunctive relief and for damages. The complaint was dismissed for failure to state a claim upon which relief could be granted, Ind. Rules of Procedure, Trial Rule 12(B)(6), and plaintiffs appeal.

In reviewing the dismissal of a complaint pursuant to TR. 12(B)(6) the facts alleged in the complaint must be taken as true, *Wilson v. Review Bd. of Ind. Employment Security Div.* (1977), Ind.App., 369 N.E.2d 675, 680, and only where it appears that under no set of facts could plaintiffs recover is dismissal of the complaint appropriate. *Roberts v. State* (1974), 159 Ind.App. 456, 307 N.E.2d 501, 503.

The complaint alleges that Morris was informed by Fire Chief Robert Donoghue that the demotion was by order of the Mayor and that it was "political." Meeks, however, was never informed of the demotion. Rather, he was notified of his "transfer" to a different work station. When he reported to the new assignment, he found that the duties and pay were those of a private. Neither Meeks nor Morris has received any written notice of their demotions or reasons therefor, except Donoghue's statement that "you know how politics are."

Plaintiffs attempted to invoke the grievance procedure contained in their collective labor agreement with the city, but were unsuccessful. The city refused to accept the grievance and, therefore, plaintiffs initiated this lawsuit.

The complaint is in four counts, all of which were dismissed by the trial court pursuant to TR. 12(B)(6). For the reasons stated below, the trial court order is affirmed in part and reversed in part and remanded for further proceedings.

## COUNT I.

Plaintiffs first allege violation of their statutory rights as defined by IC 18-1-11-3 (Burns Code Ed. 1974).[1] This statute provided:

---

1.   Subsequent to judgment in this lawsuit, the statute was amended to cover precisely the situation at bar. IC 18-1-11-3 (Burns Code Ed. Supp. 1977) now provides:

"(a) Except in consolidated first-class cities, every member of the fire and police forces, with the exception of the fire and police chiefs, including police radio

Every member of the fire and police forces, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such members in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. On the conviction in any court of a member of the said fire or police force, including police radio operators and police signal and fire alarm operators, of any criminal offense, or upon a finding and decision of the board that any such member has been or is guilty of neglect of duty, or of the violation of rules, or neglect or disobedience of orders, or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breach of discipline, such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay. . . ."

By its terms, the statute applied only to removal from office and, therefore, was held inapplicable to adverse job action short of discharge. *Jenkins v. Hatcher* (1975), 163 Ind.App. 95, 322 N.E.2d 117 (transfer denied). Thus, the statute provided no procedural protection to a fireman or policeman who was simply reduced in rank.

Plaintiffs argue that *Jenkins* was incorrectly decided and urge this court to adopt a much more liberal construction of the statute. We are not unmindful of plaintiffs' dilemma, as pointed out by Judge Staton in dissenting to the majority opinion in *Jenkins*. However, we are persuaded by the *Jenkins* majority that application of the notice and hear-

operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office *or grade* until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. . . ." (Emphasis supplied).

ing portions of the statute to anything other than discharge from employment would be tantamount to legislation by judicial fiat, a practice in which we decline to engage.

The trial court correctly sustained the City's motion to dismiss Count I of plaintiffs' complaint.

## COUNT II.

Plaintiffs next allege that the City's failure to provide written notice and reasons for their demotions and failure to afford a hearing upon demand denied them due process of law, as guaranteed by the Fourteenth Amendment.

This claim is entitled to consideration only if the demotions deprived plaintiffs of "property" or "liberty." *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701.

### Property Interest

"Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra,* 92 S.Ct. at 2709.

Thus, a property interest can be created by statute, ordinance or by contract. *Bishop v. Wood* (1976), 426 U.S. 341, 96 S.Ct. 2074, 2077. In the case before us, the alleged property interest is said to arise from the collective labor agreements and/or from the policies and practices within the Kokomo Fire Department.[2]

Policies or practices of an institution may give rise to a "property interest" if there are "rules or mutually explicit understandings that support [a] claim of entitlement to a [particular] benefit." *Perry v. Sindermann* (1972), 408 U.S. 593, 92 S.Ct. 2694, 2699. But the sufficiency of the claim of entitlement must be measured by state law, *Bishop v. Wood, supra,* 96 S.Ct. at 2077, for only those interests "initially recognized and

---

2. Appellants concede that IC 18-1-11-3 does not create a property interest in rank. (Appellants' Brief p. 18).

protected by state law" are entitled to constitutional protection under the Due Process Clause. *Paul v. Davis* (1976), 424 U.S. 693, 96 S.Ct. 1155, 1165.

Thus, state law must affirmatively create an expectation that a particular employment relationship will continue unless and until certain defined events occur in order for the interest to be cognizable under the Due Process Clause. *Confederation of Police v. City of Chicago* (7th Cir. 1977), 547 F.2d 375; *Stevens v. Joint School Dist. No. 1* (W.D. Wis. 1977), 429 F. Supp. 477. But see *Danno v. Peterson* (N.D. Ill. 1976), 421 F. Supp. 950.

We are directed to no Indiana law which affirmatively creates an enforceable expectation of tenure in rank. Thus, plaintiffs have failed to establish a property interest in their rank sufficient to invoke the protection of the Due Process Clause of the Fourteenth Amendment. See *Moore v. Otero* (5th Cir. 1977), 557 F.2d 435.

The provision of the collective labor agreement on which plaintiffs rely to establish a property interest states:

### ARTICLE XX

"Should any employee or group of employees feel aggrieved, concerning his or their wages, hours, or condition of employment; which wages, hours and conditions are controlled by this contract, regulations or policy which is not in conflict with this contract, or concerning any matter or condition arising out of employee—employer relationship including any claim of unjust discrimination and any matter or condition affecting his or their health and safety, adjustment shall be sought as follows:

A.  It shall first be the responsibility of the employee or group of employees to seek relief from their immediate superior in charge of his or their work position.

B.  If such grievance is not resolved to the satisfaction of the employee or group of employees the problem shall be placed in writing by the individual or group and together with an assigned steward by the bargaining agent, present it to the officer in charge of his or their platoon.

C.  If grievance is still not resolved after a period of seven (7) days, the written grievance shall be presented to the Chief of the Fire Department for settlement.

D. If the agrieved [sic] still has found no satisfaction after seven (7) days, the written greivance shall be presented to the City's Board of Public Works for settlement.

E. If further consideration of the grievance is necessary, after fourteen (14) days the matter may be presented by the method of arbitration as described in City Ordinance 4150.

F. Nothing contained herein shall prevent an employee from presenting his grievance and representing himself."

Plaintiffs offer no rationale for their position, other than to state that the above-quoted provision would be an "absurd nullity" if it did not contemplate reduction in rank as a proper grievance. Such reasoning thus leads plaintiffs to conclude that the "greivance procedure constitutes a tenure in rank."

We fail to perceive the logic of plaintiffs' argument. The issue is whether this provision confers a contractual right to continue in a particular position unless and until certain defined events occur. Yet the very terms of Article XX suggest no more than a procedure to resolve employment-related disputes. We cannot discern the method by which plaintiffs would have us mystically transform these procedural guarantees into substantive rights. We hold that plaintiffs have no contractual guarantee of continued employment at a particular rank and, therefore, no property interest worthy of procedural due process protection.

*Liberty Interest*

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau* (1971), 400 U.S. 433, 91 S.Ct. 507, 510.

However, *Paul v. Davis, supra,* established that stigma to one's reputation, inflicted by the state, is not itself a deprivation of liberty within the meaning of the due process clause. The defamation must occur in the course of the termination of the employment. *Id.,* 96 S.Ct. at 1164. Thus, it is only where the defamation is accompanied by discharge or a failure to rehire that the interest rises to the level of a constitutional claim for deprivation of liberty. *Colaizzi v. Walker* (7th Cir. 1976), 542 F.2d 969, 973, cert. den. 430 U.S. 960 (1977).

In the case before us, neither Meeks nor Morris was terminated. Therefore, whatever "stigma" may have been inflicted by the demotions is diminished by the retention of employment. *Danno v. Peterson, supra*, 421 F.Supp. at 954. Thus, the only claim of stigma derives from injury to reputation, which *Paul v. Davis, supra*, denotes as less than a constitutionally protected "liberty" interest. *Moore v. Otero, supra*, 577 F.2d at 438. See also *Sullivan v. Brown* (6th Cir. 1976), 544 F.2d 279.

Further, *Bishop v. Wood, supra*, held that the defamatory communications must be published to form a claim that one's "good name, reputation, honesty or integrity" has been impaired. *Id.*, 96 S.Ct. at 2079.

Plaintiffs' complaint is apparently bottomed on the supposition that the demotions were *per se* stigmatizing. No facts are alleged indicating that the reasons for the demotions were communicated other than orally, in private conferences with plaintiffs themselves. Therefore, no constitutionally protected "liberty" interest was infringed by state action.

Accordingly, we hold that plaintiffs have failed to present a claim upon which relief could be granted and the trial court properly dismissed Count II of the complaint.

## COUNT III.

This count alleges that the demotions were in retaliation for the exercise of constitutionally protected rights of freedom of speech and association, in that plaintiffs did not support the incumbent Mayor's bid for re-election.

We begin our analysis of this claim with the proposition that:

"[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion or other matters of opinion or force citizens to confess by word or act their faith therein." *Board of Education v. Barnette* (1943), 319 U.S. 624, 63 S.Ct. 1178, 1187.

The First Amendment protects political association as well as political expression, *Buckley v. Valeo* (1976), 424 U.S. 1, 96 S.Ct. 612, 632, because freedom of association is a "basic constitutional freedom" which is "closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society. [citations

omitted]." *Id.*, 96 S.Ct. at 637. The First Amendment protects the right to speak freely and the right to refrain from speaking at all. *Wooley v. Maynard* (1977), 430 U.S. 705, 97 S.Ct. 1428, 1435. Logic dictates that these freedoms must include, as necessary corollaries, the right to associate freely and the right to refrain from associating at all.

Indeed, the very nature of our society rests upon the notion that an individual must be free to form his own beliefs, shaped by his own mind and conscience, rather than through coercion, however subtle it may be. *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 97 S.Ct. 1782, 1799. In general, therefore, "[t]hese principles prohibit a state from compelling an individual . . . to associate with a political party . . . as a condition of retaining public employment." *Id.*, 97 S.Ct. at 1799-1800.

More specifically, the Supreme Court has ruled that a non-policymaking, non-confidential public employee may not be discharged from a job which he is satisfactorily performing upon the sole ground of his political beliefs. *Elrod v. Burns* (1976), 427 U.S. 347, 96 S.Ct. 2673 (See Stewart, J., concurring in result, 96 S.Ct. at 2690).[3] The basis of the *Elrod* decision is that the threat of dismissal for failure to support a favored political party "unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise." *Id.*, 96 S.Ct. at 2683. We deem the rationale of *Elrod* applicable to the case at bar.[4]

Of course, First Amendment freedoms are not absolute. But "en-

---

3. The plurality opinion apparently would limit patronage dismissals to policymaking employees. The concurrence, however, narrows the unconstitutionality of wholesale dismissals by including "confidential" employees within the class subject to patronage dismissals. In *Marks v. United States* (1977), 430 U.S. 188, 97 S.Ct. 990, it was held that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds. [citation omitted]." *Id.*, 97 S.Ct. at 993.

4. Though the Supreme Court's opinion in *Elrod* was not available to the trial court at the time plaintiffs' complaint was dismissed, there existed sufficient persuasive case law to presage the Supreme Court's decision therein. See, e.g., *Burns v. Elrod* (7th Cir. 1975), 509 F.2d 1133; *Illinois State Employees Union v. Lewis* (7th Cir. 1972), 473 F.2d 561, cert. den. 410 U.S. 928 (1973). See also *Ramey v. Harber* (W.D. Va. 1977), 431 F.Supp. 657.

croachment 'cannot be justified upon a mere showing of some legitimate state interest.' [citation omitted]. The interest advanced must be paramount, one of vital importance, and the burden is on the Government to show the existence of such an interest. [citations omitted]." *Id.*, 96 S.Ct. at 2684. *Elrod* established that patronage dismissals of policymaking or confidential employees is justified by a vital governmental interest in "the need for political loyalty, not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Id.*, 96 S.Ct. at 2687.

Plaintiffs must bear the burden of proving that the constitutionally protected activity was a motivating force behind the demotions. Of course, plaintiffs' proof may be controverted by evidence that the demotions were for other than "political" reasons. But assuming, as we must, that plaintiffs' allegations are true, i.e., that the demotions were a result of constitutionally protected conduct, the defendants may escape liability in two ways. Defendants may prove by a preponderance of the evidence that the decision to demote the plaintiffs was justified by reasons independent of the constitutionally protected conduct. See generally, *Mt. Healthy School Dist. v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 575.[5] Additionally, defendants may show a "paramount interest" which justifies encroachment of First Amendment freedoms. *Elrod, supra,* 96 S.Ct. at 2684. In this case, the crucial ques-

---

5. But see *Tanner v. McCall* (M.D. Fla. 1977), 441 F.Supp. 503, wherein it was held that plaintiffs were required to prove that the "primary and dominant" cause of their discharge was their constitutionally protected conduct. *Id.* at 513. "In short, plaintiffs must show that, even if defendant wished to curtail their protected First Amendment freedoms apart from the wrongful reason, there were no other good reasons that independently justified their discharges." *Id.*

This holding reflects a fundamental misunderstanding of the burdens of proof enunicated in *Mt. Healthy School Dist. v. Doyle, supra.* Therein Justice Rehnquist stated:

"Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—or to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision

tion becomes whether Morris and Meeks are confidential or policymaking employees. *Rosenberg v. Redevelopment Authority of Philadelphia* (E.D. Pa. 1977), 428 F. Supp. 498, 500. In *Elrod* it was noted that:

> "No clear line can be drawn between policymaking and non-policymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an advisor or formulates plans for the implementation of broad goals. Thus the political loyalty 'justification is a matter of proof, or at least argument, directed at particular kinds of jobs.'
>
> [citation omitted].
>
> Since, as we have noted, it is the Government's burden to demonstrate an overriding interest in order to validate an encroachment on protected interests, the burden of establishing this justification as to any particular respondent will rest on the petitioners on remand, cases of doubt being resolved in favor of the particular respondent." 96 S.Ct. at 2687.

It may be argued with some force that *Elrod* and its progeny are inapplicable to situations involving adverse job action short of discharge. While the consequences of discharge are obviously greater than those resulting from a simple demotion, those persons required to ally themselves with a particular cause or political candidate in order to retain governmentally created benefits (e.g., rank) are coerced in the same manner as those required to do so in order to retain their jobs. The concern raised by the patronage dismissals in *Elrod* is not that the

---

as to respondent's reemployment even in the absence of the protected conduct." 97 S.Ct. at 576.

See also *Village of Arlington Heights v. Metropolitan Development Corp.* (1977), 429 U.S. 252, 97 S.Ct. 555, 566; *Pilkington v. Bevilacqua* (D. Rhode Island 1977), 439 F.Supp. 465, 473; *Hollifield v. McMahan* (E.D. Tenn. 1977), 438 F.Supp. 591, 593.

employees might lose their jobs if their party lost the election, but that the *threat* of losing their jobs will coerce them to affiliate with or seek the favor of the prospective victorious party. The threat of demotion for failure to support an incumbent's bid for re-election has the same coercive effect. Thus, the prohibited result is the same whether the threat is demotion or discharge—a significant impairment of First Amendment freedoms.[6]

In discussing Count II, *supra*, we determined that plaintiffs have no property or liberty interest in their rank worthy of procedural due process protection. Nevertheless,

". . . even though a person has no 'right' to a valuable benefit and even though the government may deny a benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person that infringes his constitutionally protected interests—especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized or inhibited. . . . Such interference with constitutional rights is impermissible." *Perry v. Sindermann, supra,* 92 S.Ct. at 2697.

We emphasize that plaintiffs' allegations have yet to be proved. Our holding herein merely recognizes that the facts as alleged state a claim upon which relief may be granted. Therefore, it was error for the trial court to dismiss this portion of plaintiffs' complaint.

## COUNT IV.

Count IV alleges that the city failed and refused to adjust the dispute according to the grievance procedure as set out in Count II, *supra*. While not a model of draftsmanship, the contract provides that:

"Should any employee or group of employees feel aggrieved con-

---

6. Footnote 13 of the *Elrod* plurality opinion recognizes that "[t]he increasingly pervasive nature of public employment provides officials with substantial power through conditioning jobs on partisan support, particularly in this time of high unemployment. Since the Government, however, may not seek to achieve an unlawful end either directly or indirectly, the inducement afforded by placing conditions on a benefit need not be particularly great in order to find that rights have been violated. Rights are infringed both where the Government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason . . ." 96 S.Ct. at 2683.

cerning his or their wages, hours, or condition of employment; which wages, hours and conditions are controlled by this contract, regulations or policy which is not in conflict with this contract, or concerning any matter or condition arising out of employee—employer relationship including any claim of unjust discrimination and any matter or condition affecting his or their health and safety, adjustment shall be sought as follows: . . ."

The breadth of this provision is evident and a "demotion" is arguably within the definition of grievable matters. We believe the pleadings, taken as true, serve to pose the issue whether the collective labor agreement has been breached by the city. Thus, the complaint contains allegations which state a claim for relief and it was error for the trial court to dismiss Count IV at this early stage.

The order of the trial court dismissing plaintiffs' complaint is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent herewith.

Garrard, P.J., (participating by designation) and

Shields, J., concur.

NOTE—Reported at 381 N.E.2d 510.