Mary Lou LAWSON, Plaintiff,

v.

SHERIFF OF TIPPECANOE COUNTY; Tippecanoe County Police Department; Board of Commissioners of Tippecanoe County; Tippecanoe County Council; Tippecanoe County Attorney; and Tippecanoe County, Defendants.

No. L 80–30.

United States District Court,
N. D. Indiana,
Hammond Division.

April 23, 1982.

---

fendants made defamatory statements which were libelous per se. Plaintiff seeks reinstatement, back pay, compensatory and punitive damages and attorney fees. No request is made for injunctive relief. The defendants filed a motion for summary judgment on August 3, 1981 with supporting affidavits. Additionally, the deposition of the plaintiff, Mary Lou Lawson, taken on July 29, 1980 was ordered published and carefully reviewed by the Court in consideration of this motion. Argument was had on this motion in open court with all counsel present on August 14, 1981. Plaintiff subsequently filed a memorandum in opposition to summary judgment on September 3, 1981 to which the defendants responded on December 31, 1981. All relevant record has been considered pursuant to Federal Rules of Civil Procedure 56.

## I.

The factual background is as follows.

Plaintiff was employed as a dispatcher in the Tippecanoe County (Indiana) Police Department between February 1973 and May 25, 1978. Plaintiff was informed of her discharge by the then Sheriff, John Rusk, who is now deceased. She contends Sheriff Rusk's reason for her discharge was her husband's involvement in a multi-state automobile theft-conspiracy ring in violation of 18 U.S.C. §§ 2, 2315 and 371 (1969). Plaintiff denied any involvement or knowledge of the aforesaid theft-conspiracy. Plaintiff contends her discharge was directed by the Board of Commissioners of Tippecanoe County, the Tippecanoe County Council, and the Tippecanoe County Attorney and carried out by the Tippecanoe County Sheriff. This is the wrongful discharge of which the plaintiff complains.

Additionally, plaintiff contends that remarks made by Sheriff Rusk to the press insinuating that she would tamper with vehicle registration information contained in the computer to which she had access at work were defamatory and arose from a common nucleus of operative fact.

Richard L. Russell, Kokomo, Ind., John M. Burget, Lafayette, Ind., for plaintiff.

Joseph T. Bumblegurg, Paul D. Ewan, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

On May 15, 1980 plaintiff filed a complaint in two counts, pursuant to 42 U.S.C. § 1983 alleging that her constitutional rights were violated because she was discharged from her employment without adequate notice or hearing; and that the de-

There was no contract of employment between the plaintiff and the police department. Nor was plaintiff's position statutorily created or protected by a tenure system. Plaintiff was simply an employee at will.

## II.

 John Rusk was Sheriff of Tippecanoe County when plaintiff's employment was terminated on May 25, 1978. John Rusk died December 25, 1979. Service of this complaint was made on the new sheriff, Edgar B. Harger, at the Tippecanoe County Jail. John Rusk was never made a party defendant in this action, nor has his estate or any fiduciary thereof been made a party. The complaint names as defendant the "Sheriff of Tippecanoe County" and makes mention of John Rusk only in his official capacity as sheriff. Further, the complaint alleges that "the defendants were at all times material thereto acting in their official capacities..." This is an official-capacity suit directed at a public officer seeking damages for alleged past misconduct, not a complaint alleging personal liability.

Federal Rules of Civil Procedure 25(d) provides for the automatic substitution for the successor of a state officer sued in his official capacity. Thus, to the extent plaintiff's suit sought relief from Sheriff Rusk in his official capacity, Sheriff Harger was properly served. *Kincaid v. Rusk*, 670 F.2d 737 (7th Cir. 1982).

## III.

Plaintiff complains that her procedural due process rights were violated as she alleges she was not given adequate notice and hearing for her discharge from her job. In order for a plaintiff to avail herself of due process protections she must first show that she had either a property interest or liberty interest protected by the due process clause of the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

 *Roth, supra*, stated that "... property interests ... are not created by the constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to these benefits." A property interest may arise from a statute, ordinance or contract. The sufficiency of the claim or entitlement to such a property interest must be decided by reference to state law. *Gansert v. Meeks*, Ind.App., 384 N.E.2d 1140 (1979); *McQueeney v. Glenn*, Ind.App., 400 N.E.2d 806 (1980). Indiana law provides that in order to have a property interest in continued employment, an expectation must be affirmatively created that a particular employment relationship will continue unless and until certain defined events occur in order for the interest to be cognizable under the due process clause. *Morris v. City of Kokomo*, Ind.App., 381 N.E.2d 510 (1978).

*McQueeney v. Glenn, supra*, held that in order to have a property interest in a benefit such as a job, a person clearly must have more than an abstract need for it; he must have more than a unilateral expectation for it; he must, instead, have a legitimate claim or entitlement to do it.

In *Shaw v. S. S. Kresge Co.*, Ind.App., 328 N.E.2d 775 (1975), it is stated:

"... in the absence of a promise on the part of the employer that the employment should continue for a period of time that is either definite or capable of determination, the employment relationship is terminable at the will of the employer ... there being no binding promise on the part of the employee that he would continue in the employment, it must also be regarded as terminable at his [the employer's] discretion as well. For want of mutuality of obligation or consideration, such a contract would be unenforceable [sic] in respect of that which remains executory." (cites omitted)

*McQueeney, supra*, cited the above language from *Shaw* and then added that while *Shaw* involved a private employment situation, the principles of contractual relationships are the same and the same rules

govern in non-private or public employment situations. *McQueeney* specifically dealt with a secretary and a school corporation and the court there adopted the above quoted language into the public employment situation.

■ In this case, Mary Lou Lawson did not have any tenure rights to her job; she did not have any contract of employment stating her length of employment; and there are no statutes providing for her term as radio-dispatcher. It was an employment at will, lacking any mutuality of obligation on the part of either the employer, Sheriff John Rusk, or the employee, Mary Lou Lawson, to continue the employment relationship. The plaintiff did not possess any property interest in her job that is protected by the due process clause.

*McQueeney, supra,* even goes a step farther. It states that even an employee with tenure does not have a property interest in a particular position, absent express contractual or statutory provisions that a certain employment relationship will continue. The plaintiff-secretary in McQueeney was offered a transfer of position within the school corporation, which she declined. The court said: "It is clear that she had no legitimate expectation of continued employment in the central office." *McQueeney, supra,* at 811.

In this case the plaintiff was offered other employment within the county, but she refused the transfer. Since there was no legitimate expectation of continued employment in a particular position, and no requisite property interest in the employment relationship, there could be no denial of due process unless plaintiff was somehow deprived of a liberty interest.

"Liberty" was defined broadly in *Board of Regents v. Roth, supra.* However, the definition was not without limits. As stated in *Roth,* "It stretches that concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."

In addition, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), held that a person's interest in his reputation alone, even if defamed by a state official, is neither a "liberty" or a "property" that is guaranteed protection by the due process clause. The case law has only etched out a "liberty" interest protected by the Fourteenth Amendment if the plaintiff meets the "stigma-plus" test as set forth in *Paul v. Davis, supra, Danno v. Peterson,* 421 F.Supp. 950 (N.D.Ill.1976), and *Moore v. Otero,* 557 F.2d 435 (5th Cir. 1977).

As stated in *Moore v. Otero, supra,* "to establish a liberty interest sufficient to implicate Fourteenth Amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Moore* involved a police officer who was transferred from corporal to patrolman after he allegedly failed to respond to a call for and to another patrolman. The Fifth Circuit stated:

> "Assuming that the report and assignment stigmatized Moore, his retention of employment negates his claim that he was denied in 'liberty'. *Paul v. Davis,* made it clear that stigma connected with an employment discharge could give rise is a liberty interest, but in his discussion of *Board of Regents v. Roth,* Mr. Justice Rehnquist noted for the *Paul* majority that:
>
>> certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.

*Paul v. Davis,* 424 U.S. at 710, 96 S.Ct. at 1165. When an employee retains his position even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that *Paul* reveals does not rise to the level of a liberty interest. The internal transfer of an employer, unless it constitutes such a change of status as to be regarded essentially a loss of employment, does not provide the additional loss

of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment."

This situation was similar to that in *Morris v. City of Kokomo*, 381 N.E.2d 510, which involved two demoted firemen alleging due process violations. The Court of Appeals of Indiana held:

In the case before use, neither Meeks and Morris [the firemen] was terminated. Therefore, whatever "stigma" may have been inflicted by the demotions is diminished by the retention of employment ... Thus, the only claim of stigma derives from injury to reputation, which *Paul v. Davis*, supra, denotes as less than a constitutionally protected "liberty" interest.

■ Looking once again to the case at hand, even if the plaintiff was defamed, she suffered no due process deprivation as she was offered another position besides that of radio dispatcher. As stated in *Moore* and *Morris*, the continued employment negates all constitutional deprivation. The only distinction in this case is that the plaintiff declined the reemployment. Had plaintiff accepted the new position, the case law clearly provides that there would be no due process violations. It is not plausible that plaintiff can convert an otherwise constitutionally secure scenario into an unconstitutional one by her own decision to decline the newly offered position.

However, even if there was the requisite stigmatization in the course of the termination of employment in the case at hand, plaintiff's only remedy would be to get a "name clearing" hearing. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), involved a police patrolman who alleged he was wrongfully dismissed and he was stigmatized in such dismissal which affected his subsequent employment opportunities. The Supreme Court of the United States stated that the patrolman, a non-tenured employee, has no property interest in continued employment:

Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth and Bishop* [v. Wood,

(1976) 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684], the remedy mandated by the Fourteenth Amendment is "an opportunity to refute the charge" 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 548. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name."

*Patterson v. Ramsey*, 552 F.2d 117 (4th Cir. 1977), also held that "where there is no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question ... the hearing required where a non-tenured employee has been stigmatized in the course of a decision to terminate his employment is *solely* to provide the person an opportunity to clear his name."

■ Therefore, absent any property interest in continued employment as out-lined above, plaintiff's only federal remedy for any such stigmatization would be able to get a name clearing hearing, and not to obtain reinstatement or damages.

Thus, the plaintiff had no employment right or status recognized by state law and the only claim of stigma derives from injury to reputation. Therefore, plaintiff has failed to show that she was denied a liberty interest in her employment.

IV.

■ Plaintiff also claims her substantive due process rights were violated because her discharge was allegedly arbitrary and unreasonable. *Paige v. Harris*, 584 F.2d 178 (7th Cir. 1978), involved the discharge of an attorney from employment by the Department of Housing and Urban Development. The Seventh Circuit held that "to the extent that a person has no due process rights in continued public employment, we will not review a discharge, as violative of substantive due process, simply based on the action being arbitrary and capricious." As added in *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C. Cir.1977), "the federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."

The plaintiff has suffered no due process deprivation. Therefore, as in *Paige v. Harris, supra,* this Court will not review the discharge as violative of substantive due process simply based upon its being arbitrary.

### V.

On the basis of the foregoing, summary judgment is GRANTED in favor of all defendants as to Count I, the plaintiff having no property or liberty interest in this employment at will position.

Count II raises a claim of common law libel and the plaintiff asserts pendent jurisdiction to bring the cause before this Court. In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court of the United States enunciated the parameters of pendent jurisdiction. The court there stated that "... pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs, supra,* at 726, 86 S.Ct. at 1139. Further, the court concluded that "if the federal claims are dismissed before trial, ..., the state claims should be dismissed as well." Id.

Accordingly, the prudent course in this case is to refrain from deciding the state law issues. There has been no trial and no significant time investment in this issue by the parties or the Court. Accord, *Schmidt v. Oakland Unified School Dist.,* 662 F.2d 550, 560 (9th Cir. 1981); *McLearn v. Cowen & Co.,* 660 F.2d 845, 850 (2d Cir. 1981). Therefore, Count II of plaintiff's complaint is DISMISSED without prejudice.