Thomas F. LIPINSKI, d/b/a Lipinski's
Automotive Garage, Plaintiff,

v.

Fritz DIETRICH, et al., Defendants.

Civ. No. H82–168.

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 16, 1984.

George R. Livarchik, Chesterton, Ind., for plaintiff.

L. Charles Lukmann, III, Harris & Welsh, Chesterton, Ind., for defendants.

## ORDER

MOODY, District Judge.

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment as to Liability, filed June 11, 1982, Plaintiff's Second Motion for Summary Judgment, filed March 8, 1983, and on Defendant's Motion to Dismiss, filed May 17, 1982 and renewed on April 8, 1983. The Defendant's Motion to Dismiss is GRANTED in part, the Plaintiff's First Motion for Partial Summary Judgment as to Liability is DENIED, and a decision on the issues raised in Plaintiff's Second Motion for Summary Judgment is RESERVED. The parties are ORDERED to submit Memoranda of Law to the Court on or before February 3, 1984, discussing the possibility that the defendant's actions denied plaintiff's fundamental right to free speech in violation of the Equal Protection Clause of the Fourteenth Amendment and/or Indiana Code § 36–5–4–11.

## BACKGROUND

The Court's findings of fact are set out in the Order of May 21, 1982 which granted a preliminary injunction. Briefly, Plaintiff Lipinski owns and operates a towing service in Chesterton, Indiana. Defendant Killosky, with the Board of Metropolitan Police Commissioners, maintains a list of towing operators who may be called on a rotating basis by the Chesterton Police Department to tow abandoned or disabled vehicles. There are no written prerequisites for inclusion on the list, but it is understood that only insured services available on 24-hour call may apply for placement on the towing list. At all times relevant to this litigation, plaintiff's towing service was insured and available on 24-hour call.

Plaintiff's towing service appeared on the list for approximately ten years prior to July 9, 1981. On July 9, 1981, plaintiff's name was removed from the towing list by defendant Killosky acting in his capacity as Chief of the Chesterton Police Department. The plaintiff received no notice and had no opportunity for a hearing prior to removal. By letter of July 9, 1981, defendant Killosky advised plaintiff that the removal was triggered by his "failure to cooperate with the Chesterton Police Department upon investigation of a case." This was the sole reason for plaintiff's removal. The removal had no relation to the quality of plaintiff's towing service. See Order of May 21, 1982 at paras. 20, 21.

The complaint alleges that plaintiff's position on the towing list amounted to a license of sorts and that his summary re-

moval from the list was beyond the scope of defendants' authority in violation of IC § 36–5–4–11.[1] The plaintiff further claims that the towing list itself violates IC § 36–1–3–6 [2] concerning the exercise of municipal regulatory power, IC § 9–4–1–125(c) [3] regarding ordinances limiting the use of trucks and commercial vehicles on town highways, and the Chesterton Police Department Rule # 20.[4] Finally, the plaintiff purports to bring this suit under the Fifth and Fourteenth Amendments to the United States Constitution and under Title 28 U.S.C. § 1343.

The defendants counter that the departmental practice of maintaining a towing list is in compliance with I.C. § 36–8–3–10 and § 36–8–9–6, which establish that one duty of the Chesterton Police Department is to remove all nuisances in public ways. *See* Defendants' Legal Memorandum in Support of Defendants' Motion to Dismiss.

Despite the plaintiff's various claims, debate has almost solely concerned the plaintiff's property right in his place on the towing list. The Court is as much to blame as the parties for this single-mindedness— the property issue was the principal basis for the Order of May 21, 1982, granting a preliminary injunction. In retrospect, our blind infatuation with plaintiff's constitutional property claim was misplaced. First, "[t]he great gravity and delicacy of constitutional decision-making counsels that federal courts abjure constitutional rulings where a 'dispositive nonconstitutional ground is available.'" *Ruslan Shipping Corp. v. Coscol Petroleum Corp.*, 635 F.2d 648, 650 (7th Cir.1980) *quoting Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974). *See also Transport Motor Express, Inc. v. Central States Pension Fund*, 724 F.2d 575 at 577 (7th Cir.1983). We must at least test plaintiff's other claims before relying on the constitutional issue. Second, the affidavits, memoranda of law, depositions, and hearing for preliminary injunction before this Court suggest that the plaintiff has lost no property right through the defendants' actions. We will consider this second observation before discussing the legal theory which may ultimately decide this case.

*Due Process: Property*

A property interest for purposes of due process was defined by the Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548:

> (1) In a municipality, by the legislative body of the municipality.
> (2) In a county subject to IC 36–2–3.5 or IC 36–3–1, by the legislative body of the county.
> (3) In any other county, by the executive of the county.

---

**1.** 36–5–4–11. Licenses issued by town; revocation or suspension

Sec. 11. The town executive may revoke or suspend any license issued by the town if the person holding the license has violated the terms or conditions of the license or of the law under which it was issued. As added by Acts 1981, P.L. 11, SEC. 165.

**2.** I.C. 36–1–3–6. Specific manner for exercising a power; constitutional or statutory provision; ordinance

Sec. 6 (a) If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner.

(b) If there is no constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must either:

(1) adopt an ordinance prescribing a specific manner for exercising the power; or

(2) comply with a statutory provision permitting a specific manner for exercising the power.

(c) An ordinance under subsection (b)(1) must be adopted as follows:

**3.** I.C. 9–4–1–125(c). Local authorities with respect to highways under their jurisdiction, except highways in the state highway system and the state maintained routes thereof through cities and towns, may also by ordinance prohibit the operation of trucks or other commercial vehicles, or may impose limitations as to the weight, size or use thereof, on designated highways, which prohibitions and limitations shall be designated by appropriate signs placed on such highways. Suitable and convenient routes shall be provided for traffic so diverted and appropriately marked.

**4.** Officers are prohibited from directly or indirectly recommending the employment of any particular attorney, bailbondsman, or wrecker service.

To have a property interest in a benefit a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.* at 577, 92 S.Ct. at 2709.

■■■ The existence of such a property interest is determined by state law. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A property interest under state law need not arise from statutory or judicial sources, but may originate in "rules or mutually explicit understandings that support [the plaintiff's] claim of entitlement to the benefit." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

In accordance with these decisions, a state court in Indiana has ruled that for a property interest to arise, "state law must affirmatively create an expectation that a particular employment relationship will continue unless and until certain defined events occur." *Morris v. City of Kokomo,* 178 Ind.App. 56, 381 N.E.2d 510, 514 (1978). *See also Lawson v. Sheriff,* 537 F.Supp. 918 (N.D.Ind.1982). The plaintiff has cited no state or municipal law which affirmatively creates an expectation in continued presence on an informal towing list or a license within the meaning of I.C. 36–5–4–11.

■■■ The plaintiff also contends that an implied contract arose from his inclusion on the list and his continuing reliance on police business. But aside from duration, there is little to support the existence of an implied contract.[5] Plaintiff's name was on the list and plaintiff responded to the calls he received. But as was indicated at the hearing on preliminary injunction, neither the tower nor the police demanded any assur-ances regarding the list's continued existence or the continued availability of the tower's services. Plaintiff did not expand his business in reliance on the calls referred from the police. Even if a contract can be implied in these circumstances, it is unenforceable in Indiana law. It is impossible to ascertain what the terms of an implied contract might be, and there are too few indicia of agreement to imply the existence of a contractual relationship between the parties.

■■■ Further, in Indiana,

... in the absence of a promise on the part of the employer that the employment should continue for a period of time that is either definite or capable of determination, the employment relationship is terminable at the will of the employer ... there being no binding promise on the part of the employee that he would continue in the employment, it must also be regarded as terminable at his [the employer's] discretion as well.

*Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775, 779 (1975) (citations omitted).

These principles also govern contracts for public employment. *McQueeney v. Glenn,* 400 N.E.2d 806 (Ind.App.1980). If a contract were to be implied between Mr. Lipinski and the Chesterton Police, it would be terminable at the will of either.

■■■ Finally, there is no mutually explicit understanding between the plaintiff and defendant in this case. A number of factors point to an implicit acceptance of a continuing relationship: the use of the tower's services over a ten year period, the absence of written requirements, the mutuality of the arrangement. But without the explicit representations required by both *Roth* and *Perry,* there is no protectible property interest. There can be no deprivation of property "unless the state earlier conferred upon the plaintiff a right to con-

---

5. *See generally Vail v. Board of Education,* 706 F.2d 1435 (7th Cir.1983): "[I]t is the binding nature of a contract rather than its length which is significant... [T]he length of time that an individual retains an asset affects the *weight* or *value* of the interest, but not the *nature* of the interest." *Id.* at 1438.

tinued employment by telling him, in a manner that made it reasonable for the employee to expect the state to stand behind its word, that it would continue to employ him." *Smith v. Board of Education,* 708 F.2d 258, 261 (7th Cir.1983). *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699; cf. *Hewitt v. Helms,* — U.S. —, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

*Alternatives to Property*

■ The plaintiff presents several alternatives to his property claim. Plaintiff argues a violation of Indiana Code § 9–4–1–125(c). That provision, however, is directed at traffic regulations rather than police practices. *See generally Holt v. Brazil,* 205 Ind. 710, 185 N.E. 904 (1929); *McAllister v. Butler,* 139 Ind.App. 613, 220 N.E.2d 540 (1966). The Chesterton Police Department Rule # 20 deals specifically with towers, but ordinances or rules do not have the same force as a law. Instead, the question is one of power. If the state conferred on the police or municipal corporation the power to enforce Rule # 20, then "the … authorities are necessarily clothed with reasonable discretion to determine the manner in which the act shall be performed; and all reasonable methods of executing such power are permissible." *Walker v. Jameson,* 140 Ind. 591, 37 N.E. 402 (1894); *State v. Abel,* 203 Ind. 44, 178 N.E. 683 (1931). The Chesterton Police towing list is not compiled from recommendations, and Rule # 20 does not directly address the failure to recommend. The defendants' actions here seem to be a reasonable exercise of their discretion.

There is, however, a caveat implicit in all attempts to exercise power within the state-municipality-police sphere, *i.e.,* the acts must be constitutional. In the textbook case of *Yick Wo v. Hopkins,* 118 U.S.

356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the administration of a facially constitutional zoning law violated the equal protection clause. Justice Matthews observed that

whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration … with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of [the 14th Amendment].

*Id.*

*Yick Wo* concerned pervasive racial discrimination by a public licensing board.

The case of *Bart v. Telford,* 677 F.2d 622 (7th Cir.1982), is more nearly comparable to the instant situation. The suit arose from a mayor's requirement in the absence of statutory authority that his employee take a leave of absence while running for the mayor's position.[6] The plaintiff proceeded in part on the theory that her First Amendment rights were violated. The issue was remanded to the District Court, and Judge Posner of the Seventh Circuit observed that "[t]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* at 625.

After *Telford,* a single pesky fact blocks defendants' success in the case at bar: that the sole reason for the plaintiff's removal from the list was his refusal to cooperate in a police investigation. There are many legitimate administrative reasons why defendants might wish to pare down the list or eliminate it altogether. Instead, defendants reacted solely to plaintiff's non-cooperation, with the consequence that their acts appear to contravene the plaintiff's rights

6. Though *Bart v. Telford,* 677 F.2d 622 (7th Cir.1982) concerned an employer-employee situation, its rationale applies here. Once intentional discrimination is demonstrated, the line between success and failure in an equal protection case seems to be that between a well-defined, limited benefit and a mere expectation.

Actionable benefits include, but are not limited to, contracts of employment. The bidding cases fall into the latter category; they concern expectations. *See LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983). Both *Bart v. Telford* and the instant suit fall into the former class, as they concern clearly defined, existing benefits.

under the First Amendment of the Constitution.

*First Amendment Infringement*

 In general, the first amendment protects the right to refrain from speaking as a corollary to the protected right to speak. *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). *See also Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). This is a conditional right. *Schaefer v. United States*, 251 U.S. 466, 40 S.Ct. 259, 64 L.Ed. 360 (1920); *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). Political speech may be suppressed upon a very strong showing of state interest, *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), though no speech may be suppressed without compelling justification. *Reed v. Shorewood*, 704 F.2d 943, 949–50 (7th Cir.1983). Government regulation of speech is permissible only in narrow circumstances. *Consolidated Edison Co. v. Public Service Commission*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). The defendant's apparent policy can be justified only if it furthers a compelling government interest and is closely drawn to advance that interest. *Elrod v. Burns*, 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684–85, 49 L.Ed.2d 547 (1976).

In *LaFalce v. Houston*, 712 F.2d 292 (7th Cir.1983), the court rejected a bidder's contention that his free speech rights were violated when he was denied a municipal contract because he did not support the mayor. Judge Posner's decision was grounded in policy considerations:

 \* \* \* [A] decision upholding a First Amendment right to have one's bid considered without regard to political considerations would invite every disappointed bidder for a public contract to bring a federal suit against the government purchaser. Civil service laws protect many public employees from being discharged; but it is in the nature of competitive bidding that every award of a contract involves the rejection of one or more other bids, each of which could form the basis of a federal suit under the theory advanced by the plaintiff in this case. *LaFalce*, at 294.

 The case at bar is distinguishable on three bases. First, as Mr. Lipinski was denied an existing benefit, the "floodgates" problem is minimal. Upholding the plaintiff's first amendment rights here would not extend a cause of action to every aggrieved tower in the area, but only to those who are discharged solely because of speech-related disagreements with the police.

Secondly, unlike a bidding situation, the Police Department of Chesterton was not forced to choose one tower over another. It is difficult to insist that, in selecting an individual from among many similar applicants for a single position, the government cannot consider attributes unrelated to the job specifications. *LaFalce* rightly relaxes that requirement. It is not in the least onerous, however, to insist that when there is no choice to be made, the benefit be extended to all on a basis that does not indirectly regulate speech.

Thirdly, all parties agree that the plaintiff's discharge was based solely on his failure to cooperate in the investigation. There is no question of balancing or indeterminate motive.

This situation seems to fall within the narrow ambit of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In both cases, the U.S. Supreme Court held that the discharge of a non-policymaking public employee solely because of his political beliefs violated the first amendment. Similarly, Mr. Lipinski was discharged from the towing list solely because of his decision not to cooperate with a police investigation. His silence may have reflected political convictions. Even if it did not, the Police Department's apparent failure to inquire

disregarded the importance of limiting regulation of speech to narrow and well-defined areas.

The Court's conclusion here follows directly from the alternative holding in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In that decision, the Supreme Court ultimately upheld the teacher's claim of a property right in his employment based on a "mutually explicit understanding." *Id.* at 601, 92 S.Ct. at 2699. As an alternative basis of decision, the plaintiff advanced a First Amendment claim, alleging that his public criticism of school policies led to his dismissal. Justice Stewart wrote for the majority:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly. *Speiser v. Randall*, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.

408 U.S. at 597, 92 S.Ct. at 2697.

Stewart added that this principle applies regardless of the public employee's contractual or other claim to a job. *Id.* at 597–98, 92 S.Ct. at 2697–98. *See Brown v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Keyishian v. Board of Regents*, 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1966); *Shelton v. Tucker*, 364 U.S. 479, 485–86, 81.S.Ct. 247, 250–51, 5 L.Ed.2d 231 (1960).

The *Perry* case was ultimately decided on the respondent's property claim because "the respondent has yet to show that the decision not to renew his contract was, in fact, made in retaliation for his exercise of the constitutional right of free speech." 408 U.S. at 598, 92 S.Ct. at 2698. The ingredient lacking in *Perry* may be present in the case at bar. Defendant acknowledged in his letter of July 9, 1981, that the plaintiff's exercise of his right to free speech was the sole reason for the plaintiff's removal from the towing list.

It is therefore ORDERED that defendant's Motion to Dismiss is GRANTED in part, that Plaintiff's first Motion for Partial Summary Judgment as to Liability is DENIED, and that a final decision on the issues raised in Plaintiff's Second Motion for Summary Judgment is RESERVED. The parties are ORDERED to submit affidavits regarding the first amendment aspects of this case on or before February 3, 1984.