**DOWNTOWN AUTO PARKS, INC., Plaintiff–Appellant,**

v.

**CITY OF MILWAUKEE and William R. Drew, Commissioner of the Department of City Development, Defendants–Appellees.**

No. 90–3832.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1991.

Decided July 23, 1991.

William A. Jennaro, Steven L. Nelson, Cook & Franke, Milwaukee, Wis., for plaintiff-appellant.

Rudolph M. Konrad, Office of City Atty., Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Plaintiff Downtown Auto Parks brought this suit for damages pursuant to 42 U.S.C. § 1983 alleging *inter alia* that defendants infringed plaintiff's First and Fourteenth Amendment rights by refusing to renew two parking lot leases. On defendant's motion for summary judgment, the district court dismissed the complaint. We affirm the dismissal.

Plaintiff Downtown Auto Parks operates parking facilities. The City of Milwaukee ("City") leased the McArthur Square and Milwaukee Area Technical College ("MATC") parking structures to Downtown Auto Park's predecessor company on July 31, 1982. Wis.Stat. § 66.079 requires the City to lease its revenue-producing parking lots to private persons, unless it cannot obtain reasonable terms and conditions. The pertinent portion of the statute provides:

66.079. Parking Systems. (1) * * * If, in first class cities, a charge is made for parking privileges in a parking system or parking lot and attendants are employed there, the parking system or parking lot shall be leased to private persons. No leasing is required if the 1st class city cannot obtain reasonable terms and conditions.

Wis.Stat. § 66.079 (1985–1986). In 1984 the City renewed the initial two-year leases with Downtown Auto Parks for another two-year term. In January 1986, with the expiration of the second term approaching in July 1986, the Milwaukee Parking Commission recommended that the McArthur Square and MATC leases be extended again until July 31, 1988.

Subsequent to the Parking Commission's favorable recommendation, Downtown Auto Parks learned that the City was lobbying to have the Wisconsin state legislature revise Section 66.079 of the Wisconsin statutes to allow the City to retain companies to manage the lots without leasing them. Downtown Auto Parks lobbied against that change and the City's effort ultimately was defeated.[1] On May 23, 1986, the Department of City Development, at the direction of defendant William R. Drew, its Commissioner, notified Downtown Auto Parks that the City had rejected the Parking Commission's recommendation and would not be granting renewal of the leases expiring on July 31, 1986. The City instead adopted a resolution authorizing the hiring of System Parking, Inc. as a management agent for the lots and stating that a management contract was necessary because reasonable lease terms could not be obtained.

Downtown Auto Parks brought suit against Drew and the City in the Circuit Court of Milwaukee County, claiming that defendants had deprived plaintiff of its due process, equal protection, and free speech rights by failing to renew the leases for the lots. Downtown Auto Parks alleged in addition that the City's conduct violated Wisconsin state statutes and the Milwaukee city charter.

The case was removed to the Eastern District of Wisconsin, and defendants filed a motion for summary judgment on the ground that the complaint failed to state any viable federal constitutional claims. The district court granted that motion and filed a supporting opinion. Judge Evans first ruled that plaintiff had not been deprived of property without due process of law in contravention of the Fourteenth Amendment since it did not have a property interest in the extension of the leases. There being no prior agreement to extend

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. It was not until the following year that the statute was amended in the manner proposed by the City. See 1987 Wis.Acts 152 § 1.

the leases, no property was taken away. As to plaintiff's claim that the City's refusal to extend the leases violated the First Amendment, the district judge relied on *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983), certiorari denied, 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984), and *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583 (7th Cir.1989), certiorari denied, —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990), holding that independent contractors such as plaintiff enjoy no First Amendment protection from a city's use of political criteria in awarding public contracts. Judge Evans found in addition that the equal protection claim was insufficiently articulated to withstand summary judgment. Plaintiff appealed, seeking review only of the district court's findings with respect to the plaintiff's First and Fourteenth Amendment claims.[2] Finding the district court's assessment of the claims to be correct, we affirm.

### Appellate Jurisdiction

■ At the oral argument, we questioned whether this Court had jurisdiction over the appeal. Judge Evans granted defendants' motion for summary judgment as to all federal claims, but simultaneously remanded the pendent state claims to the Milwaukee County Circuit Court for further proceedings, raising a question about finality. Subsequently both parties have informed us[3] that this Court has jurisdiction to hear the appeal of the portion of the judgment dismissing plaintiff's federal claims.[4] The precise proposition is supported by *Briggs v. American Air Filter Co.,* 630 F.2d 414, 416 n. 1 (5th Cir.1980) (entry of summary judgment appealable despite the remand of other claims to state court). In *Allen v. Ferguson,* 791 F.2d 611 (7th Cir.1986), this Court cited *Briggs* and held that an order logically preceding the remand and necessitating a remand to state

court of the remainder of the case is reviewable. *Id.* at 613–614 (order dismissing defendant whose diverse citizenship formed basis for federal jurisdiction reviewable); see also *Waco v. United States Fidelity & Guaranty Co.,* 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934) (same). Therefore we have jurisdiction here.

### First Amendment Claim

The theory of the plaintiff's First Amendment claim is that it lost the two parking facility operations in 1986 because of its lobbying efforts and that this "retaliatory discharge" violated the First Amendment. See *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (government may not deny benefit to a person on a basis that infringes his or her constitutionally protected interests).

■ The adjudicated cases in this Circuit do not extend First Amendment protection to independent contractors whose bids for public contracts are rejected on the basis of their political views. We examined a similar problem in *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983), certiorari denied, 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984), a case which involved a company's bid to install and maintain benches along Springfield city streets. The company alleged that Springfield had hired a competitor sign company simply because it was a political supporter of the mayor. We held that the First Amendment does not forbid a city from using political criteria in awarding public contracts to independent contractors. While recognizing that certain public employees are protected from retaliatory employment decisions, see *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), a panel of this Court drew a distinction between inde-

---

**2.** These are the only matters appealed. Plaintiff in Count II of the amended complaint alleged that the City had also violated its First and Fourteenth Amendment rights by terminating a month-to-month lease held on a lot at 724 N. Second Street. Because on appeal plaintiff makes no arguments with respect to this third lot, we consider any appealable issue regarding the lot waived.

**3.** The parties were asked to submit supplemental briefs on this issue.

**4.** The remand order itself is non-reviewable pursuant to 28 U.S.C. § 1447(d).

pendent contractors and public employees. The panel surmised that independent contractors generally tend to be less dependent on government jobs than are public employees. *LaFalce,* 712 F.2d at 294. It also noted that firms having extensive government business are often "political hermaphrodites" having extensive connections to both major parties to protect themselves. *Id.* In this scenario of cultivated political neutrality, a judicial rule imposing political impartiality would have little effect. *Id.* Finally, the Court was swayed by a practical consideration: a rule upholding a company's First Amendment right to have its bid considered without regard to politics would "invite every disappointed bidder for a public contract to bring a federal suit against the government purchaser." *Id.* Seven years after *LaFalce,* we reaffirmed its holding in *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583 (7th Cir.1989), certiorari denied, — U.S. —, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990).

▮ Under *LaFalce* and *Triad,* the First Amendment did not forbid Milwaukee from considering plaintiff's adverse lobbying efforts in refusing to extend its leases. Pressed to distinguish its case from this Circuit's precedents, Downtown Auto Parks argues that it was not involved in a bidding situation, insisting that it had an existing lease which was terminated.

Plaintiff's characterization is clearly incorrect even if we assume that plaintiff is drawing a distinction relevant to First Amendment analysis. The City chose not to extend Downtown Auto Parks' lease beyond the lease term, which ended in July 1986. It did not breach any contract with Downtown Auto Parks or deprive it of an existing benefit. Upon expiration of Downtown Auto Parks' leases, the City was free to consider leasing to any company that would supply reasonable terms, see Wis. Stat. § 66.079. The statute requires the

City to lease lots if it can find reasonable terms, but does not force it to lease to any particular party. The City's refusal to renew Downtown Auto Parks' lease a second time was thus a refusal of one possible bid. This case falls squarely under the holdings of *LaFalce* and *Triad.*[5]

A more pertinent objection to application of *LaFalce* and *Triad* is that the recent Supreme Court case *Rutan v. Republican Party of Illinois,* — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), has cast doubt on the validity of the reasoning in those cases. *Rutan* significantly extended First Amendment protection in the political patronage context. The Supreme Court rejected the view taken by this Court that the First Amendment only barred patronage practices substantially equivalent to a dismissal. See *Rutan v. Republican Party of Illinois,* 868 F.2d 943 (7th Cir.1988) (en banc), reversed, — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52, on remand, 916 F.2d 715 (7th Cir.1990). The Court instead held that hirings, transfers, promotions and recalls after layoffs based on political affiliation and support are an impermissible infringement on the First Amendment rights of public employees. 110 S.Ct. at 2737, 2739.

Although *Rutan* directly addresses only the plight of government employees and says nothing about the First Amendment rights of independent contractors, the scope of *Rutan,* and rationale behind it, seem to be at odds with the holding of *LaFalce* and *Triad.* Most importantly, we expressed in *LaFalce* a concern about flooding the federal courts with new First Amendment claims. The Supreme Court apparently has less fear of the expansion of litigation in this area for in *Rutan* it explicitly granted disappointed applicants, as well as discharged employees, a cause of action.

---

**5.** Downtown Auto Parks also tries to distinguish *LaFalce* and *Triad* by pointing out that in this case plaintiff allegedly has been retaliated against because it chose to exercise its free speech rights and not on the basis of party affiliation. The *Elrod* and *Branti* analysis is unchanged, however, in situations where the government retaliates against protected speech. See, *e.g., Mt. Healthy School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

While recognizing that *Rutan* has altered some of the assumptions upon which the *LaFalce* and *Triad* decisions were based, we affirm the continued validity of those earlier cases. *Rutan* did extend First Amendment protection, but only within the context of government employment. *Rutan* was the culmination of a line of cases "concerned only with the constitutionality of dismissing public employees for partisan reasons." *Elrod*, 427 U.S. at 353, 96 S.Ct. at 2680. All circuits considering the question of whether to extend the holdings of *Elrod* and *Branti* to independent contractors have declined. See *Sweeney v. Bond*, 669 F.2d 542, 545 (8th Cir.1982), certiorari denied *sub nom. Schenberg v. Bond*, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *Horn v. Kean*, 796 F.2d 668 (3rd Cir.1986). Since *Rutan* was decided, the Sixth Circuit has also refused to prohibit the government from considering political criteria in awarding of public contracts. See *Lundblad v. Celeste*, 874 F.2d 1097, 1102 (6th Cir.1989), vacated, 882 F.2d 207 (6th Cir.1989), reinstated in part, 924 F.2d 627 (6th Cir.1991) (en banc), certiorari denied, — U.S. —, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (U.S.1991) (No. 90–1594). We continue to concur in the view taken by the other circuits, and hold that political favoritism in the awarding of public contracts is not actionable.

As a last resort, plaintiff relies on *Lipinski v. Dietrich*, 578 F.Supp. 235 (N.D.Ind. 1984),[6] a case in which an independent contractor was permitted to maintain his First Amendment claim that he was the victim of a politically motivated discharge. Assuming that *Lipinski* was correctly decided, the case by its terms is limited to a situation where an individual is "discharged solely because of speech-related disagreements with the police," 578 F.Supp. at 240, and so cannot aid the plaintiff here.

In sum, plaintiff's First Amendment claim must be dismissed because the City was not prohibited from allowing politics to influence its decision not to award a contract to plaintiff.

*Fourteenth Amendment Claim*

■■■■ Plaintiff's other argument is that it had a sufficient property interest in the continuation of the leases to warrant protection under the Fourteenth Amendment's due process clause. The due process analysis is familiar. The threshold requirement for a successful due process claim is the deprivation of a liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). To have a property interest protected by the Fourteenth Amendment, "a person * * * must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Moreover, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

Downtown Auto Parks clearly had a unilateral expectation of renewal of the leases. Recognizing that the expectation is an insufficient interest to warrant Fourteenth Amendment protection, plaintiff argues that it had in addition: 1) a legitimate claim of entitlement to its lease extension; 2) an implied contract for an extension with the City even if it had not obtained renewal explicitly. These arguments have no merit.

■■■ As was explained above, Downtown Auto Parks was not "entitled" to any extension. The two leases expired in July 1986. Reading the terms of the leases otherwise to bind the parties to renewal would "convert a short-term business arrangement into a lifelong marriage," as the district judge pointed out. *Downtown Auto Parks, Inc. v. The City of Milwaukee*, No. 88 C 874 (E.D.Wis. Nov. 13, 1990) (Decision and Order). Under Section 66.-079 of the Wisconsin statutes, the City was free to lease the parking lots to any private persons. Since the City had discretion to award the leases to a competitor of plaintiff, plaintiff had no property subject to Fourteenth Amendment protection. *Roth*, 408 U.S. at 578, 92 S.Ct. at 2709 (profes-

---

**6.** Throughout both its briefs, plaintiff mistaken-ly calls it *Lapinski v. Dietrich*.

sor's employment contract silent on issue of reemployment does not create entitlement absent state statute or University rule securing interest in same); *Scott v. Village of Kewaskum,* 786 F.2d 338, 339–340 (7th Cir.1986) (to the extent an interest appeals to discretion rather than rules, there is no property).

In some circumstances, a failure to renew a contract can amount to a deprivation of property. In *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983), this Court held that a person had a due process right not to be deprived of the renewal of his or her Illinois liquor license. Our holding with respect to Downtown Auto Parks' leases is not inconsistent with *Reed.* The principle is the same and requires the separation of "what is securely and durably yours under state * * * law" from "what you hold subject to so many conditions as to make your interest meager." *Reed,* 704 F.2d at 948. In *Reed,* the requirements for a liquor license, as set by state laws, were so undemanding as to suggest that "the legislature expected most licenses to be renewed as a matter of course." *Id.* There is no comparable suggestion in Section 66.079 that applicants will be safeguarded from arbitrary non-renewal. Plaintiff thus had no protected property interest in renewal of the parking lot leases.

Plaintiff argues that "at the very least there was an implied in fact agreement between Downtown Auto Parks and the City for an extension" (Pl.Br. 19). See *Perry,* 408 U.S. at 601–602, 92 S.Ct. at 2699–2700 (contract implied under state law can create protected property interest even in absence of written contract). Plaintiff points to promises made by City employees and the recommendation of renewal made by the Parking Commission as actions by which the City indicated it was willing to be bound.

Plaintiff's implied contract argument fails because in Wisconsin a contract cannot be implied to bind a municipality "if such implication would conflict with a statute prescribing a mode of contracting by which alone a city could bind itself." *Appleton Waterworks Co. v. Appleton,* 132 Wis. 563, 570, 113 N.W. 44, 47 (1907). Section 66.079 states that the City is the proper party to authorize execution of the lease. City officers can execute leases only if authorized by the city council. *Kranjec v. West Allis,* 267 Wis. 430, 435, 66 N.W.2d 178, 181 (1954). The Parking Commission is merely an advisory body whose function is limited to the making of recommendations. Ch. 23.01(4) of City of Milwaukee Charter. Under Wisconsin law, Downtown Auto Parks was simply not entitled to rely on the actions of city officers or the Parking Commission, absent authorization from the City Council.

The City's refusal to continue doing business with this independent contractor did not violate the First Amendment or the Fourteenth Amendment. Plaintiff's true problem was not that its free speech rights were infringed or that it was deprived of property without due process of law. In its clearest statement of its dilemma, Downtown Auto Parks notes that the City "revers[ed] the recommendation of the Parking Commission without a factual basis" (Pl.Br. 18). Plaintiff also is frustrated that the City declared itself unable to find reasonable lease terms without explaining how the terms offered by Downtown Auto Parks were unreasonable. Something in the City Charter or in Wisconsin state law may forbid the abrupt, silent about-face executed by the City, thus saving the plaintiff's state law claims in state court. This suit, however, was properly dismissed.

Judgment affirmed.