956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rudolph LEWIS, Plaintiff-Appellant,
v.
Ronald HAGER, Individually and in his Official Capacity as
Superintendent of the Floyd County Board of Education;
James D. Adams, Individually and in his Official Capacity as
Chairman of the Floyd County Board of Education; and Floyd
County Board of Education, By and Through its Members, Mary
Hall, Tommy Boyd, Ray Campbell and Arville Duff, Defendants-Appellees.
 No. 91-5621.
 United States Court of Appeals, Sixth Circuit.
 March 10, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Rudolph Lewis appeals the order of the District Court granting summary judgment in favor of defendants Floyd County Board of Education ("School Board"), Ronald Hager, Superintendent of the School Board, and James Adams, Chairman of the School Board. Plaintiff claims that defendants violated his civil rights by failing to renew his school bus transportation contract after plaintiff refused to support the candidate favored by defendants for election to the school board. For the following reasons, we AFFIRM the District Court.
 
 I.
 
 2
 Plaintiff had contracted with the School Board to transport students on bus routes for the 1988-89 school year. The School Board had awarded the bus routes to plaintiff after the solicitation of sealed bids. Plaintiff had successfully bid on these routes for several years prior to 1988-89.
 
 
 3
 Plaintiff alleges that shortly before the November 1988 school board election, defendants Hager and Adams telephoned plaintiff to demand that plaintiff use his influence to support defendants' favored candidate in the election. Plaintiff claims that he told Hager that he intended to vote for the opposing candidate. Plaintiff further claims that one James Steffy visited him on behalf of Hager and Adams and threatened him on the night before the election.
 
 
 4
 In July 1989, the School Board solicited bids for the bus routes for the 1989-90 school year. Plaintiff submitted the same bid for which he had successfully been awarded the bus routes for previous years. Margaret Steffy, the wife of James Steffy, also submitted bids for the same routes. Mrs. Steffy underbid plaintiff and she was awarded the bus routes on August 9, 1989. Plaintiff contends that Mrs. Steffy's low bids were a sham because on September 27, 1989, the School Board raised her compensation to rates above plaintiff's bid.
 
 
 5
 Plaintiff filed this action on December 1, 1989. He alleged that defendants violated his First, Fifth, and Fourteenth Amendment rights by causing him to lose the bus route contract because he refused to support their candidate, and sought compensatory and punitive damages. Defendants filed a motion for summary judgment which was granted by the District Court on March 4, 1991. The court dismissed the case on the grounds that the defendants were entitled to qualified immunity. Plaintiff filed a motion to alter, amend, or vacate the order of summary judgment, arguing that even if defendants were entitled to qualified immunity in their individual capacities, they were not entitled to qualified immunity in their official capacities. The District Court granted plaintiff's motion, stating that defendants were entitled to qualified immunity only in their individual capacities; however, the District Court reaffirmed the order of summary judgment in favor of defendants, including the School Board holding that no cause of action exists for an independent contractor who fails to be awarded a public contract because of political beliefs.
 
 II.
 
 6
 We review a grant of summary judgment de novo, making all reasonable inferences in favor of the non-moving party. Storer Communications, Inc. v. National Ass'n of Broadcast Employees & Technicians, 854 F.2d 144, 146 (6th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 III.
 
 7
 The District Court concluded as a matter of law that plaintiff had no cause of action against defendants in their individual capacities because defendants were entitled to qualified immunity. The Supreme Court enunciated the standard for applying qualified immunity in Harlow v. Fitzgerald, 457 U.S. 800 (1982):
 
 
 8
 [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
 
 
 9
 Id. at 818. The District Court concluded, based on our decision in Lundblad v. Celeste, 874 F.2d 1097 (6th Cir.1989), vacated in part and modified in part, 924 F.2d 627 (6th Cir.1991) (en banc), cert. denied, 111 S.Ct. 2889 (1991), that there is no law which clearly establishes a constitutional violation when public contracts are awarded on the basis of partisan politics. To find a clearly established constitutional right, a district court must find binding precedent from the Supreme Court, its court of appeals, or itself. Ohio Civil Service Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988). We agree with the District Court that no such binding precedent exists.
 
 
 10
 In Lundblad, this Court stated that the Supreme Court has not held that awarding public contracts based on political patronage violates either the Equal Protection Clause or the First Amendment. 924 F.2d at 628. The Supreme Court has held in Branti v. Finkel, 445 U.S. 507 (1980) and Elrod v. Burns, 427 U.S. 347 (1976), that state employees cannot be dismissed from their jobs solely because of political affiliation, but the Court has not suggested that this rule should be extended to cases involving public contracts. We also observed in Lundblad that there has been no case in this Court or another court of appeals which clearly establishes a constitutional or statutory violation for awarding a public contract on the basis of political patronage. Id. All circuits considering the question of whether to extend Branti and Elrod to independent contractors have declined to do so. Downtown Auto Parks, Inc. v. City of Milwaukee, 938 F.2d 705, 710 (7th Cir.), cert. denied, 112 S.Ct. 640 (1991). We therefore affirm the District Court's holding that the defendants are entitled to qualified immunity in their individual capacities because defendants have not violated a clearly established constitutional right.
 
 IV.
 
 11
 We turn then to whether plaintiff has stated a cause of action against the School Board. His claim against defendants in their official capacity is likewise a claim against the Board. Hafer v. Melo, 112 S.Ct. 358, 361 (1991). Plaintiff argues that he had a property interest in the continuation of his contract with the School Board and that defendants violated his due process rights by failing to renew his contract. To have a property interest protected by the Fourteenth Amendment, a plaintiff must have "a legitimate claim of entitlement" to a property interest which was created by "existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Because the School Board had the authority to award the bus route contracts to any person who submitted a bid, plaintiff had no property right subject to Fourteenth Amendment protection simply because he was the present holder of the bus route contracts. Downtown Auto Parks, 938 F.2d at 710.
 
 
 12
 Plaintiff further argues that he had a property interest in the bus route contracts because the bidding process was a sham and he was actually the low bidder. Mrs. Steffy bid on two bus routes, the Daniels Creek and Big Branch routes. Mrs. Steffy bid $67.90 per day on the Daniels Creek contract and plaintiff bid $75.00. On the Big Branch route, Mrs. Steffy bid $68.78 per day and plaintiff bid $69.00. Plaintiff agrees that from these figures it would appear that Mrs. Steffy was the low bidder, but argues that actually she was not the low bidder because on September 27, 1989, the School Board raised Mrs. Steffy's compensation. Mrs. Steffy's rates were raised to $70.78 on the Big Branch route and $84.28 on the Daniels Creek route, which were higher than the prices that had been bid by plaintiff. However, the number of miles on the Daniels Creek run was increased from 37 at the time of the bid to 56, and the number of students from 22 to 23, and the Big Branch run from 24.5 miles to 40 miles and from 52 students to 63. Rates were also increased for other runs where miles and students increased. Plaintiff argues that based on the short time period from August 9, 1989 to September 27, 1989, it can be inferred that Mrs. Steffy knew at the time she submitted her bid that her compensation would be raised and that her bids were artificially low. Plaintiff argues that because he made his bid without the knowledge that the School Board would raise the rates, the bidding process was fraudulent.
 
 
 13
 We agree with plaintiff that if the bidding process had involved fraud, as a disappointed bidder plaintiff may have a claim of entitlement to the bus route contracts. However, plaintiff failed to plead in the District Court that there was fraud in the bidding process. In a claim of fraud, all circumstances constituting fraud must be stated in the pleadings with particularity. Fed.R.Civ.P. 9(b). We therefore affirm the District Court's grant of summary judgment because plaintiff has not shown a legitimate claim of entitlement to the bus route contracts.
 
 V.
 
 14
 Plaintiff argues that defendants Hager and Adams in their official capacities and the School Board violated plaintiff's First Amendment rights. Plaintiff does not allege that defendants prevented him from speaking; rather, he alleges that his property interest in the bus route contracts was taken from him in retaliation for his refusal to support defendants' candidate.
 
 
 15
 Plaintiff argues that Perry v. Sindermann, 408 U.S. 593 (1972) supports his claim that the First Amendment protects him regardless of whether he had a property interest in the bus route contracts. We find Perry distinguishable from the present case. In Perry, the plaintiff was a teacher who had been employed under a series of one-year contracts at Odessa Junior College in the Texas state college system. He testified before the Texas legislature and advocated the elevation of Odessa to four-year status, a position opposed by Odessa's Board of Regents. After the expiration of his one-year contract, the Board of Regents did not offer him a new contract. Id. at 594-95. The Supreme Court determined that plaintiff had an expectation of being offered a new contract based on rules and understandings fostered by state officials, and the Court found that summary judgment was improper on the issue of whether plaintiff's First Amendment rights had been violated. Id. at 598. We believe that the Supreme Court considered the plaintiff's expectation in a contract as an integral part of his claim that his rights had been violated. In the present case, plaintiff had no expectation because there cannot be an expectation in a bidding process. Because plaintiff had no expectation in receiving the bus route contracts, he has suffered no injury as a result of defendants' alleged conduct. Accordingly, we find no error in the District Court's grant of summary judgment in favor of the School Board and the defendants in their official capacities.
 
 VI.
 
 16
 Finally, plaintiff claims that defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985(3). Four elements must be proved by a plaintiff to succeed in a section 1985(3) claim:
 
 
 17
 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.
 
 
 18
 Conklin v. Lovely, 834 F.2d 543, 548 (6th Cir.1987) (citing United Board of Carpenters Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). This Court has held that "s 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate." Id. at 549 (quoting Cameron v. Brock, 473 F.2d 608, 610 (6th Cir.1973)). Nevertheless, because we find that plaintiff has not been denied his due process or free speech rights, we hold that the District Court did not err in granting summary judgment in favor of defendants on plaintiff's section 1985(3) claim.
 
 VII.
 
 19
 Accordingly, the order of the District Court granting summary judgment in favor of defendants is AFFIRMED.