Keen A. UMBEHR, Plaintiff,

v.

Joe McCLURE, Glen Hiser and George Spencer, Defendants.

No. 91–4081–RDR.

United States District Court,
D. Kansas.

Dec. 30, 1993.

Brenda J. Bell, Everett, Seaton, Miller & Bell, Richard H. Seaton, Manhattan, KS, for plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action under 42 U.S.C. § 1983. Plaintiff alleges that defendants, as members or ex-members of the Wabaunsee County Commission, voted or helped cause a vote to terminate plaintiff's trash hauling contract in retaliation for plaintiff's exercise of his right to free speech. This case is now before the court upon defendants' motion for summary judgment. For the reasons which follow, the motion shall be granted.[1]

*Summary Judgment Standards*

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. [2505, 2509 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170] (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548 [, 2552] (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving

party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 89 L.Ed.2d 538, 106 S.Ct. 1348 [, 1355–56] (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324[, 106 S.Ct. at 2553]; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

*Uncontroverted Facts*

The following facts appear uncontroverted. During the relevant times in this case, plaintiff was not an employee of Wabaunsee County, Kansas. Plaintiff operated a trash hauling business. He had a contract with Wabaunsee County, although the contract did not involve plaintiff hauling trash for Wabaunsee County. The contract originated on April 7, 1981 and was redone on February 11, 1985. Under the 1985 contract, a trash hauling rate was established. Plaintiff agreed to haul trash at the established rate for six cities in Wabaunsee County (Alma, Alta Vista, Eskridge, Harveyville, Paxico and McFarland) provided that those cities approved and endorsed the contract. The cities were not required to endorse the contract. If a city did endorse the contract, then plaintiff alone had the franchise to haul trash for that city at the rate established in the contract. Plaintiff was not paid by Wabaunsee County for hauling trash for the cities in the county. Plaintiff was paid by the cities on a per residence basis. One city in Wabaunsee County, Maple Hill, was never part of the contract.

The contract provided that it would renew automatically for successive one-year terms unless either party notified the other in writing of the intent to terminate at least sixty days prior to the end of the contract's annual term. After the Wabaunsee County Com-

---

1. This case was placed upon a trial calendar for January 31, 1994 while this motion was still pending. A motion to continue the trial setting, which was recently filed, is moot by reason of this order.

mission terminated the contract in 1991, the city of Alta Vista contracted with a different trash hauling company after seeking competitive bids. Plaintiff retained the trash hauling business of the other cities for which he had hauled trash before the contract was terminated.

In 1990, when defendants Spencer, Heiser and McClure were members of the Wabaunsee County Commission, a vote was taken to terminate the contract with plaintiff. Spencer and Heiser voted in favor of termination; McClure voted against. However, notice of the termination was not made to plaintiff in a timely fashion. So, the contract continued through 1990. Defendant McClure's term as a county commissioner expired on January 14, 1991. On January 28, 1991, another vote was taken to terminate the contract with plaintiff. Defendants Spencer and Heiser voted in favor of termination; defendant McClure's replacement on the commission, a Mr. Anderson, voted against termination. This time plaintiff was given timely notice of the intent to terminate the contract.

Throughout the 1980s and in 1990, plaintiff spoke out on many issues. These issues included: landfill user rates; the cost of obtaining copies of county documents from the county; alleged violations of the Kansas Open Meeting Act; and practices of the county road and bridge department. Plaintiff made oral comments before the county commission and also wrote letters or columns which appeared in some newspapers published in the county.

*Arguments for Summary Judgment*

Defendants' motion for summary judgment raises many arguments, not all of which will be decided in this order. The court will not attempt to decide upon summary judgment many of the factors relevant to an analysis, under *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) or *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), of whether expression by a government employee is protected by the First Amendment. In other words, the court will assume solely for the purposes of this order that if plaintiff had been a government employee, he would have been protected from termination in retalia-

tion for his statements. The court will also assume for the purposes of this order that plaintiff's comments did motivate the votes in favor of terminating plaintiff's contract with Wabaunsee County. Further, the court shall assume that the termination of the contract caused damages to plaintiff. Finally, the court shall not grant summary judgment on the grounds of legislative immunity, although this appears somewhat of a close question which the court would examine closely if this case were tried. Nevertheless, the court shall grant summary judgment to defendants for the following reasons.

*First Amendment*

■ We hold that the First Amendment does not prohibit defendants from considering plaintiff's expression as a factor in deciding not to continue with the trash hauling contract at the end of the contract's annual term. There may be a split of authority in this area. But, the court will side with the majority of courts which do not extend to independent contractors the same First Amendment protections granted to government employees.

■ The Seventh Circuit has held in *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983) *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984) and *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583 (7th Cir.1989) *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990) that the First Amendment does not forbid a government agency from using political criteria in awarding contracts to independent contractors. The appellate court distinguished political patronage cases like *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) on the grounds that independent contractors are less dependent on government jobs than are public employees. It was also noted that independent contractors can work both sides of the political fence and that a contrary rule would invite a First Amendment lawsuit from every disappointed bidder for a government contract.

The Seventh Circuit reiterated its position in *Downtown Auto Parks, Inc. v. City of*

*Milwaukee,* 938 F.2d 705 (7th Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991). In this case, the governmental defendant refused to renew a lease with the plaintiff parking facility operator, allegedly because of the plaintiff's lobbying efforts against a proposed change in state law which would have permitted the defendant to retain companies to manage parking lots without leasing them. The plaintiff tried to distinguish previous Seventh Circuit cases on the grounds that this was not a bidding situation (instead, plaintiff had a lease which was not renewed), and also because plaintiff was claiming retaliation against free speech rights, not political affiliation. The Seventh Circuit denied the force of both distinctions. The court also held that the extension of *Elrod* and *Branti* in *Rutan v. Republican Party of Illinois,* 497 U.S. 1050, 111 S.Ct. 13, 111 L.Ed.2d 828 (1990) made no difference in the case. In conclusion, the court held that "plaintiff's First Amendment claim must be dismissed because the City was not prohibited from allowing politics to influence its decision not to award a contract to plaintiff." 938 F.2d at 710.

Other circuit courts have made similar rulings. In *Horn v. Kean,* 796 F.2d 668 (3rd Cir.1986), the court held that New Jersey motor vehicle agents were independent contractors who could be replaced on the basis of their political affiliation. In *Fox & Co. v. Schoemehl,* 671 F.2d 303 (8th Cir.1982), the court held that a city's mayor could deny a public contract to an accounting firm which had previously had the contract, because of the firm's political affiliation. See also, *Sweeney v. Bond,* 669 F.2d 542 (8th Cir.) *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). This line of authority has also been followed in: *Blankman v. County of Nassau,* 819 F.Supp. 198, 205 (E.D.N.Y.1993) (developer alleged denial of development opportunity because of opposition to county policies); *Nu–Life Construction Corp. v. Board of Education,* 809 F.Supp. 171, 182 (E.D.N.Y.1992) (contractor cannot claim First Amendment violation for allegedly retaliatory initiation of a board of review proceeding against the contractor); *Medcare HMO v. Bradley,* 788 F.Supp. 1460, 1464–1466 (N.D.Ill.1992) (no cause of action

for cancellation of contract allegedly in retaliation for lobbying activities).

Plaintiff has cited three cases to counter this line of authority. Two of the cases, *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983) and *Sisk v. Texas Parks & Wildlife Dept.,* 644 F.2d 1056 (5th Cir.1981), involve the alleged denial of a liquor license and a commercial fishing license in a manner which discriminates against protected expression. We believe these cases can be distinguished from the case at bar. Like government employees, a bar owner seeking a liquor license and a commercial fisherman seeking a fishing license are much more dependent upon the government for their livelihood than plaintiff was dependent upon the contract with Wabaunsee County for his livelihood. The final decision as to whether plaintiff supplied trash service for a city rested with the city, not Wabaunsee County. The decision to terminate the contract between Wabaunsee County and plaintiff did not prevent plaintiff from contracting with the cities individually to provide trash service.

The third case cited by plaintiff is *North Mississippi Communications, Inc. v. Jones,* 792 F.2d 1330 (5th Cir.1986). There, the court held a cause of action was stated by a newspaper publisher that claimed defendants retaliated against the newspaper's critical stories by giving defendants' legal advertisement business to another publisher and by threatening other commercial advertisers. The instant case may be distinguished on its facts since the cities of Wabaunsee County, not the County itself, decided whether plaintiff received their business. Thus, while we assume that the termination of the contract was a contributing cause to a loss of business, it was not an independent cause. In contrast, the defendants in the *North Mississippi Communications* case allegedly exercised sole discretion over the legal advertisement business of the plaintiff.

█ In conclusion, we are persuaded by the majority of the above-cited cases that plaintiff, as an independent contractor, cannot claim that his First Amendment rights were violated by the alleged retaliatory termination of his contract with Wabaunsee

County, especially when that contract was neither a necessary condition for plaintiff to do business nor a guarantee that plaintiff would receive trash hauling business from the cities of Wabaunsee County.

### Qualified Immunity

Under the doctrine of qualified immunity, summary judgment must be granted against any damages claim plaintiff has against defendants for actions taken in their capacities as government officials. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) holds that government officials cannot be made liable for civil damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." We do not believe it was clearly established in 1991 that the First Amendment prohibited defendants from acting to terminate plaintiff's contract with Wabaunsee County because of his public comments. Therefore, defendants are entitled to qualified immunity from damages for any actions taken by them as public officials. See *Lundblad v. Celeste,* 874 F.2d 1097 (6th Cir.1989) *modified on other grounds on rehearing,* 924 F.2d 627, *cert. denied,* —— U.S. ——, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991) (qualified immunity granted against First Amendment claim of bidder on contract to operate a golf course at a state park).

### McClure

Finally, we believe there is an independent reason to grant summary judgment to defendant McClure, since he was not on the Wabaunsee County Commission when the contract with plaintiff was terminated. We believe there is insufficient evidence which proves that defendant McClure caused the termination of the contract. See *Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 595 (7th Cir.1986) (an individual cannot be liable under § 1983 unless he caused or participated in the alleged constitutional deprivation).

In reaching this conclusion, we shall assume that defendant McClure did not agree with plaintiff's public comments. We shall further assume that defendant McClure had expressed animosity toward plaintiff and supported the termination of the contract with plaintiff during and after his term as county commissioner. Still, defendant McClure did not vote for the termination of the contract as a member of the Wabaunsee County Commission and was not on the Commission when the vote was taken which actually terminated the contract. The vote to terminate the contract is the alleged constitutional violation in this case. Defendant McClure did not participate in it. Nor is there evidence that defendant McClure committed any act to interfere with the independent judgment of the other commissioners so that his action became a probable cause of the vote to terminate the contract. We do not believe advocacy in favor of the vote provides a sufficient basis for liability. Otherwise, a cause of action might exist against anyone who used rhetoric to promote or encourage an alleged constitutional violation by a state actor. Obviously, this could chill the same First Amendment rights which plaintiff seeks to enforce.

In conclusion, because the record does not support a reasonable basis to believe defendant McClure caused or participated in the alleged retaliatory act in this case, an independent reason exists to grant defendant McClure summary judgment.

### Conclusion

For the above-stated reasons, defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**