Terri POLAK; Evaristo Rios,

v.

Angel LEBRON, Commissioner of Conservation and Cultural Affairs; Joseph Sutton, Deputy Chief of Conservation and Cultural Affairs; George

---

Farrelly, Commissioner of Public Safety; Juan Luis, Governor of the Virgin Islands\* Iris Martinez; Gloria Taylor, Appellants (\*Amended per Clerk's Order dated 5/29/01).

No. 01–2197.

United States Court of Appeals, Third Circuit.

Argued Nov. 13, 2002.

Decided March 18, 2003.

Kenth W. Rogers, (Argued), Kenth W. Rogers, P.C., Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Appellants.

Douglas J. Juergens, (Argued), Richard Davis, Office of Attorney General of Virgin Islands, Department of Justice, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Appellees.

Before SCIRICA, ALITO and RENDELL, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is an appeal from a denial of a motion to intervene. We will affirm.[1]

I

In 1985, Evaristo Rios and Terri Polak filed suit in the United States District Court for the District of the Virgin Islands.[2] Plaintiffs sought to enjoin certain

---

1. We have jurisdiction under 28 U.S.C. § 1291.

2. Eve Herbst joined as a plaintiff to the proceedings in 1985.

officials of the Virgin Islands from prohibiting their vending at a location across from Drake's Seat in St. Thomas.[3] Plaintiffs alleged defendants revoked their location permits without notice and opportunity for a hearing in violation of the Due Process Clause of the Fourteenth Amendment. At the time, plaintiffs held business licenses issued by the Department of Consumer Affairs, which were based on the location permits allowing them to sell their goods near Drake's Seat.[4] Under Virgin Islands law, in order to sell goods from a public way, a vendor needed both a license from the Department of Consumer Affairs and a location permit from the Department of Public Safety.[5] *See* 23 V.I.Code Ann. § 92; 27 V.I.Code Ann. § 302(e).

After the preliminary injunction hearing on June 25, 1985, the District Court found that plaintiffs were "itinerant vendor[s] ... who sell goods and wares at a temporary location" and that "the provisions of ... Title 23, Section 92 [of the Virgin Islands Code], which require a police [or location] permit, together with a license to do business issued by [the Department of] Consumer Affairs, constitute[d] the necessary procedures for itinerant vendors to properly conduct their businesses ... across from the Drake Seat site." *Rios v. Lebron*, No. 85–280, at 1–2 (D.V.I. Sept. 17, 1985) (quotations omitted). The court concluded "[t]hat a permit, once having been granted by the Department of Public Safety for whatever period of time, cannot be revoked without due process of law."

*Id.* at 2. Thus, the court granted the preliminary injunction. But the preliminary injunction was never made permanent and the suit lay dormant.

Sometime in 1993, the government stopped issuing location permits to the vendors at the Drake's Seat location. Instead, the vendors entered into "Memoranda of Agreement" with the Department of Housing, Parks, and Recreation. The Memoranda were month to month agreements whereby each vendor paid $75.00 per month (a total of $900.00 per year) for the right to temporarily occupy the area across from Drake's Seat. The Department of Licensing and Consumer Affairs accepted these Memoranda in satisfaction of the requirement that vendors must have a valid location permit in order to receive their business license. *See* 23 V.I.Code Ann. § 92; 27 V.I.Code Ann. § 302(e); 3 V.I. R. & Regs. § 341/272–3. As the District Court found in the present matter, "[t]his practice seems to have followed a tacit understanding among the various departments involved." *Rios v. Lebron*, No. 85–280, 2001 WL 378950, 2001 U.S. Dist. LEXIS 5538, at *4 (D.V.I. Apr. 12, 2001).

Seven years later, on June 9, 2000, the Commissioner of Housing, Parks, and Recreation gave the vendors thirty days' notice that the Department would terminate the Memoranda. After resistence from the vendors, the government granted two time extensions, but, on December 1, 2000, removed the vendors from their location across from Drake's Seat.[6] On December

---

3. Drake's Seat is a scenic point that overlooks Magen's Bay.

4. According to their location permits, Rios and Polak sold costume jewelry, t-shirts, music boxes, souvenirs and hand-made items.

5. From the record, it appears business licenses were, at one point, issued by the Department of Consumer Affairs and were later is-

sued by the Department of Licensing and Consumer Affairs. Similarly, it appears location permits were, at one point, issued by the Department of Public Safety and were later issued by the Department of Police.

6. Appellants claim the Memoranda were cancelled with only one day's notice and the following day, December 1, 2000, they were expelled from their location across from

12, 2000, an informal meeting was held to address the vendors' concerns. Still not satisfied, plaintiffs, Rios and Polak,[7] invoked the preliminary injunction from 1985, claiming deprivation of a property interest without due process, and asked the District Court "to order the successors-in-interest to the officials enjoined in 1985 to appear and show cause why they should not be held in contempt." *Id.* at *5, 2001 WL 378950. Plaintiffs also sought to make the preliminary injunction permanent.

After hearings, the District Court, on January 29, 2001, held that plaintiffs apparently no longer had a legitimate property interest that would support a due process claim. Thus, the court issued an order suspending "the effect of the preliminary injunction" from 1985. *Rios v. Lebron*, No. 85–280, at 3 (D.V.I. Jan. 29, 2001). The court deferred a final ruling in order to give plaintiffs additional time to file a supplemental brief that would establish authority for the court "to find a legitimate property interest." *Id.* On April 12, 2001, the District Court confirmed its earlier findings and dissolved the preliminary injunction. *Rios*, 2001 U.S. Dist. LEXIS 5538, at *15.

Appellants here, Iris Martinez and Gloria Taylor, were not involved in the proceedings in 1985, nor are they plaintiffs in the proceedings initiated in December 2000. Martinez and Taylor are now involved in this suit because they filed a motion to intervene on December 21, 2000. They claim to have interests similar to plaintiffs'. But the District Court denied their motion to intervene as moot on January 29, 2001.

Martinez and Taylor now seek review. Specifically, they seek to intervene and to reverse the judgment that the vendors do not have property interests meriting due process protections. The plaintiffs in the suit, Rios and Polak, do not challenge the judgment of the District Court and are not participating in this appeal.

II

Before addressing their claims, we must examine whether Martinez and Taylor failed to timely appeal. Under Fed. R.App. P. 4(a)(1)(A), notice of appeal must be filed within thirty days of a final order.[8] On January 29, 2001, after determining plaintiffs would likely not prevail, the District Court denied appellants' motion to intervene as moot; if plaintiffs had no legitimate claim, neither would appellants. Given this January 29 order, defendants contend the appeal filed on May 3 is untimely. Appellants respond that the denial

Drake's Seat. But appellants never dispute receipt of the June 9, 2000 letter from the Commissioner of Housing, Parks, and Recreation providing thirty days' notice. In fact, the June 9, 2000 letter is included in appellants' appendix. Thus, we conclude that, on June 9, 2000, appellants were notified the Memoranda would be terminated.

7. It appears Eve Herbst was not involved in the proceedings initiated in December 2000.

8. Fed. R.App. P. 4(a)(1)(B) provides that "[w]hen the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered."

Whether the thirty or sixty day time limit applies here does not affect our analysis because May 3 is more than sixty days from January 29. Thus, for purposes of this appeal, we assume the thirty day time limit applies and do not address whether a putative intervenor in a suit involving Virgin Islands officials may utilize the sixty day time limit under Fed. R.App. P. 4(a)(1)(B). *See Gregson & Assocs. Architects v. Gov't of the V.I.*, 675 F.2d 589, 590–91 (3d Cir.1982) (assuming the thirty day time limit applied when the Government of the Virgin Islands was the defendant); *Island Block Corp. v. Gov't of the V.I.*, No. 96–148, 1996 WL 635500, 1996 U.S. Dist. LEXIS 19931, at *1 (D.V.I.App.Div. Oct. 30, 1996) (similar).

of intervention was not made final until April 12 when the District Court entered the final judgment that plaintiffs could not prevail. Thus, appellants contend their appeal is timely.

■ "[T]he denial of a motion to intervene is a final, appealable order." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1179 (3d Cir.1994). As such, a putative intervenor must normally file an appeal of such denial within thirty days of the order and "may not await final judgment in the underlying action." *United States v. City of Milwaukee*, 144 F.3d 524, 528 (7th Cir.1998); *see also Hutchinson v. Pfeil*, 211 F.3d 515, 518 (10th Cir.2000) ("[A]n appeal from the denial of intervention cannot be kept in reserve; it must be taken within thirty days of the entry of the order, or not at all.") (quotations omitted). Here, the order rejecting appellants' motion to intervene was filed on January 29. At that point, appellants could have appealed the District Court order. They were required to file their notice of appeal within thirty days. Although the April 12 judgment finally concluded the underlying suit, it did not determine whether appellants could intervene. In fact, the April 12 judgment did not mention the motion to intervene. The thirty day time limit began to run on January 29, not April 12, and appellants' notice of appeal, filed on May 3, is untimely.

### III

Even if appellants' notice of appeal was timely and intervention would otherwise be granted, appellants' due process rights were not violated. In order to state a due process claim, one must be deprived of a protected property or liberty interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth*, the Supreme Court explained that for purposes of due process:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .

*Id.* at 577, 92 S.Ct. 2701. Because appellants were not deprived of a property right, there was no due process violation.

There is a dispute as to what property interest was allegedly deprived. Appellants suggest the property interest stemmed from the location permits. The District Court focused on asserted rights from the Memoranda of Agreement. What is undisputed is that appellants did not have location permits issued in their names. Nonetheless, appellants argue they effectively owned the permits because they took over businesses run by persons who had permits.[9]

---

9. In their reply brief, appellants also argue the government violated their rights by refusing "to grant [them] vendor location permits in December 1992, without notice or hearing," and thus "prevented appellants from obtaining vendor location permits." This argument implies appellants never owned location permits and thus contradicts appellants' main contention that they received their predecessors' location permits, which were then improperly denied renewal. We need not consider the argument in appellants' reply brief as claims not raised in an opening brief are waived. *See, e.g., Fed. Deposit Ins. Corp. v. Deglau*, 207 F.3d 153, 169 (3d Cir.2000).

Even if we were to consider the argument, we would find it without merit. Besides contradicting appellants' main contention, the argument lacks legal support. "[A]n entitle-

■ But the record shows that the location permits could not lawfully be transferred. Appellants are unclear as to when they took over the businesses run by others, placing the date at some point between 1985 and December 1992. Of the location permits dated during this time that were submitted in appellants' appendix,[10] all, except one from 1985, provide that they are not transferable. Moreover, in March 1992, the prohibition against transferring permits was codified in the Virgin Islands Rules and Regulations. The Rules and Regulations provide that "[p]lacement [or location] permits are valid only for the person or persons to whom the permit has been issued, and shall not be loaned, sold, or otherwise transferred. Failure to comply with this section shall result in summary revocation of any such permit." 3 V.I.R. & Regs. § 341/272–12(b).[11] Therefore, any asserted transfers of permits were invalid and could not create a valid property interest.

The District Court held the asserted property interest stemmed from the Memoranda. But the court concluded the Memoranda were unauthorized, ultra vires agreements that could not provide the vendors with a property interest. Appellants do not offer a reasonable challenge to the District Court findings,[12] nor do we find error through our own review.

While we see no error with the District Court decision, there is another reason to conclude no due process violation occurred. Even if the Memoranda were valid agreements between appellants and the Virgin Islands government,[13] the property inter-

ment may exist for a benefit sought but not yet obtained if [the] law limits the exercise of discretion by the ... official responsible for conferring the benefit." *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 679 (3d Cir.1991). But we are not aware of any relevant limitation on the government's discretion not to issue location permits. To the contrary, the Virgin Islands Rules and Regulations provide for discretion in issuing location permits. *See, e.g., 3 V.I. R. & Regs.* §§ 341/272–5, –7, –13.

Appellants cite to 27 V.I.Code Ann. §§ 303 and 304 to claim that notice and a hearing is required before the government can refuse to issue a location permit to an applicant. But these sections refer to business licenses, not location permits. 3 V.I.R. & Regs. § 341/272–19, which governs location permits, only provides that a hearing is necessary before a location permit is suspended or revoked from a permit holder. As discussed *infra,* appellants never owned location permits and thus this provision does not apply here.

10. None of the location permits in the appendix were issued in appellants' names. But the submitted permits show, in general, what rights were given to those who had the permits and what restrictions were placed on the permits.

11. In support of their contention that location permits could be transferred, appellants direct us to 27 V.I.Code Ann. § 301(d). But § 301(d) governs the transfer of business licenses, not location permits. Moreover, § 301(d) prohibits the transfer of business licenses, except that a business license automatically will be transferred to the widow or widower of a licensee and may be transferred from a corporation on the sale of that corporation. Even if the issue at hand were the transfer of business licenses, neither of the exceptions to the prohibition against transfer would apply here.

12. Again in their reply brief, appellants argue that Virgin Islands Bill Number 23–0310 declared the Memoranda legally binding. Although we need not address it, *see Deglau,* 207 F.3d at 169, we find the argument lacks merit because there is no indication the bill was passed into law. We do not see any reason why a bill, which did not become law, should affect our decision here.

13. We note the appendix contains only a Memorandum issued to Iris Martinez. As such, we cannot be sure that Gloria Taylor was issued a Memorandum. Nevertheless, we assume *arguendo* that both Martinez and Taylor were issued Memoranda.

est arising from the Memoranda would be circumscribed by the terms of the agreement. *See Roth,* 408 U.S. at 577–78, 92 S.Ct. 2701. The Memoranda provide that each is a "month-to-month permit" for "temporary (month to month) occupancy." Furthermore, while the Memoranda state that the yearly payment total is $900.00, payment is to be made in monthly installments of $75.00. The Commissioner of Housing, Parks, and Recreation testified that the Department of Housing, Parks, and Recreation never accepted a yearly lump sum payment and rarely accepted payment for more than one month at a time-allowing one or two vendors to pay for two months. At most, therefore, the Memoranda only provided the vendors with the right to sell goods in a particular location for one month at a time.

Under certain circumstances, a person may have a property right stemming from the expectation that a permit be renewed or extended. "[A]n entitlement may exist for a benefit sought but not yet obtained if [the] law limits the exercise of discretion by the ... official responsible for conferring the benefit." *Midnight Sessions,* 945 F.2d at 679. But we are aware of no limitation on the Department of Housing, Parks, and Recreation's discretion not to renew or extend the monthly occupancy period described in the Memoranda. Thus, there is no property right stemming from a possible renewal or extension that would prohibit the Department of Housing, Parks, and Recreation from terminating the Memoranda after one month's notice. *See, e.g., Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710 (7th Cir.1991) (explaining that, because the government had discretion not to renew a two-year lease of property to plaintiff, "plaintiff had no property subject to [due process] protection").

IV

For the above reasons, we will affirm the District Court's denial of appellants' motion to intervene.